EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Olga M. Rodríguez Rosado y otros<br><br>    Demandantes-Peticionarios<br><br>v.<br><br> SYNTEX (F.P.), Inc.; SYNTEX<br>Puerto Rico, Inc.<br><br>    Demandados-Recurridos | Certiorari<br><br>2003 TSPR 145<br><br>160 DPR _____ |

Número del Caso: CC-2002-681


Fecha: 30 de septiembre de 2003


Tribunal de Circuito de Apelaciones:
                    Circuito Regional VI


Juez Ponente:
                    Hon. Frank Rodríguez García

Abogado de la Parte Peticionaria:
                    Lcdo. Luis R. Mellado González


Abogados de la Parte Recurrida:
                    Lcdo. Rafael E. Aguiló Vélez
                    Lcda. Migdalí Ramos Rivera
                    Lcda. Karem M. Rodríguez García

Materia: Reclamación de Horas

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Olga M. Rodríguez Rosado y otros

  Demandantes Peticionarios

       v.

SYNTEX (F.P.), Inc.; SYNTEX          CC-2002-681
Puerto Rico, Inc.

    Demandados Recurridos

Opinión del Tribunal emitida por el Juez Asociado señor Corrada del Río

San Juan, Puerto Rico, a 30 de septiembre de 2003.

El presente caso nos brinda la oportunidad de resolver dos cuestiones fundamentales. Primeramente, si las disposiciones de la Ley de Salario Mínimo, 29 L.P.R.A. § 245 *et seq.*, vigente en este caso, proveen para el reclamo prospectivo de las sumas adeudadas en concepto de salarios; esto es, si un empleado tiene derecho a reclamar por aquellas causas de acción surgidas posteriormente a la presentación de la demanda ante los tribunales. En segundo lugar, debemos determinar si la interposición de una reclamación al amparo del Art. 13 de la Ley de Horas y Días de Trabajo, 29 L.P.R.A. §282 *et seq.*, tiene el efecto

de interrumpir la prescripción de las acciones en beneficio de aquellos trabajadores que se unan con posterioridad al pleito. Veamos.

I

El 21 de agosto de 1996, la señora Olga M. Rodríguez Rosado junto a otros codemandantes, por sí y en representación de otros quinientos (500) miembros de "la clase" (en adelante, "peticionarios"),[1] presentaron una demanda ante el Tribunal de Primera Instancia, Sala Superior de Humacao (en adelante, "TPI"), en contra de Syntex (F.P.) Inc. y Syntex Puerto Rico, Inc. (en adelante, "Syntex" o "recurrida") por alegadas violaciones a la antigua Ley de Salario Mínimo de Puerto Rico, Ley Núm. 96 de 26 de junio de 1956, 29 L.P.R.A. § 245 *et seq.*[2] Solicitaron las sumas que alegadamente se les adeudan por concepto de trabajos realizados durante el período estatutario para tomar alimentos; aquéllas por los trabajos realizados durante el séptimo día de descanso; las correspondientes a vacaciones no concedidas o no disfrutadas consecutivamente y/o fraccionadas indebidamente; aquéllas sumas no pagadas como bono de navidad, créditos al plan de pensión; y las sumas a parearse bajo los planes de ahorro.[3]

El 31 de octubre de 1996, Syntex contestó la demanda alegando como defensas afirmativas, *inter alia*, que los demandantes fueron compensados por los servicios prestados conforme a la ley y la

---

[1] **Posteriormente, los peticionarios desistieron de litigar como una clase. *Véase* Apéndice del recurso, a las págs. 29-30.**

[2] **En su totalidad, éstos eran empleados y ex-empleados de Syntex, los cuales trabajaron a tiempo completo por espacio de 10 años en la planta de Humacao. De los 15 demandantes originales, 10 continuaron trabajando para Syntex luego de la interposición de la demanda original. *Véase* Apéndice del recurso, a las págs. 29-30.**

[3] **Íd. a las págs. 29-45.**

reglamentación aplicable; que bajo ningún concepto, les adeudan sumas de dinero; que los peticionarios obtuvieron la autorización del Secretario del Trabajo para reducir y/u obviar los períodos de alimentación correspondientes, sin que mediara dolo o intimidación de parte de la recurrida; y que el presente pleito no procede que sea certificado como un pleito de clase. Plantearon, además, las defensas de prescripción, incuria, cosa juzgada, y compensación.[4]

El 25 de noviembre de 1996, el TPI emitió una Orden para que Syntex preservara los expedientes de nómina y jornales correspondientes a las reclamaciones de los peticionarios. A tenor con la orden de preservación de evidencia, se recopilaron los expedientes de nóminas, incluyendo los registros de entrada y salida para todos los demandantes, durante el período comprendido desde 1986 hasta el año de presentación de la demanda, o sea, 1996. Dichos documentos fueron trasladados de la planta de Syntex a las oficinas del Bufete Schuster, Usera, Aguiló & Santiago, donde estarían disponibles para inspección, tan pronto dicho foro así lo ordenara.

El 23 de enero de 1997, el TPI ordenó, a solicitud de la recurrida, la paralización de los procedimientos de descubrimiento de prueba hasta tanto se dilucidara lo relativo a la certificación del pleito como uno de clase. Posteriormente, el 9 de mayo de 1997, dicho foro limitó el descubrimiento de prueba únicamente a deponer al Director de Recursos Humanos de Syntex, así como a sus dos predecesores, a los únicos fines de demostrarle al tribunal que existían unas circunstancias similares entre los trabajadores que permitían la certificación de la clase. Luego de lo cual, los

---

[4] Íd. a las págs. 19-24.

peticionarios presentarían su solicitud de certificación de clase.[5] En cuanto al resto del descubrimiento, el TPI expresó que "[l]o acordado... deja vigente la paralización del descubrimiento de prueba que el Tribunal ordenó en cuanto a otros *issues*, que no sean en cuanto a las tres deposiciones de los tres directores de recursos humanos en Syntex, para propósito de establecer que los demandantes están en situaciones similares."[6]

Así las cosas, el 8 de julio de 1998, los peticionarios enmendaron la demanda para incluir 60 nuevos empleados que, alegadamente, contaban con reclamaciones de igual naturaleza.[7]

El 13 de octubre de 1998, los peticionarios cursaron a Syntex un "Primer Requerimiento de Admisiones y de Producción de Documentos e Interrogatorios",[8] al cual la compañía recurrida se opuso argumentando que el TPI había paralizado todo lo relacionado al descubrimiento de prueba hasta tanto dicho foro determinara si se iba a certificar el pleito como uno de clase. Arguyeron que, al no conocerse si el pleito se iba a certificar como uno de clase, no estaban en posición de conocer a cuáles personas se les estaría conduciendo el descubrimiento de prueba.[9]

---

[5] **Apéndice del recurso, a la pág. 207.**

[6] **Íd. a la pág. 208**

[7] **Los períodos de tiempos para los cuales los 15 primeros demandantes trabajaron para Syntex figuraron en el "Anejo A" de la demanda original, el cual contiene una tabla explicativa con el nombre, información de estos relacionada a la posición que ocupaban, así como el salario devengado, las horas adeudadas, y las fechas de inicio y terminación de cada uno en el empleo. Del mismo modo, los datos correspondientes a los nuevos 60 reclamantes figuraron en un nuevo "Anejo A-1". *Véase* Apéndice del recurso, a las págs. 43-45, 73-86.**

[8] **Apéndice del recurso, a las págs. 87-117.**

[9] **Íd. a las págs. 203-05. *Véase* "Minuta", Apéndice del recurso, a la pág. 207.**

(Continúa . . .)

Posteriormente, el 7 de diciembre de 1998, los peticionarios presentaron ante el TPI una segunda demanda enmendada para incluir 5 nuevos reclamantes, y, a su vez, desistieron de tramitar el pleito como uno de clase.[10] Prosiguieron el pleito con arreglo a lo dispuesto en el Artículo 13 de la "Ley de Horas y Días de Trabajo", Ley Núm. 379 de 15 de mayo de 1948, 29 L.P.R.A. § 282, y la "Ley de Salario Mínimo", Ley Núm. 96 de 26 de junio de 1956, 29 L.P.R.A. § 246(d).

El 10 de enero de 1999, los peticionarios solicitaron al TPI que ordenara a la recurrida contestar el primer requerimiento de admisiones e interrogatorios de 13 de octubre de 1998, pues a su entender era académica la paralización ordenada anteriormente por dicho foro, debido a que el pleito ya no se tramitaría como uno de clase, sino como una reclamación representativa al amparo del Art. 13 de la Ley Núm. 379, *supra*.[11] Lo solicitado fue declarado con lugar por el TPI mediante Orden de 16 de febrero de 1999.

El 6 de abril de 1999, el TPI celebró una vista sobre el estado de los procedimientos. En ésta, el tribunal concedió 90 días a los peticionarios para añadir a la demanda a todo aquél empleado que deseara formar parte del pleito.[12] Asimismo, ordenó a

---

[10] **Apéndice del recurso, a las págs. 118-145. Acompañaron a dicha demanda enmendada un "Anejo A-2", en el cual se detallaban las reclamaciones de estos 5 nuevos**

continúa...

[9] ...continuación

**reclamantes, los cuales laboraban en la planta de Syntex, en el Municipio de Guayama. Con la inclusión de estos últimos, la totalidad de los reclamantes era 80.**

[11] **Syntex presentó su oposición tardíamente el 22 de febrero de 1999.**

[12] **Apéndice del recurso, a las págs. 370-71.**

(Continúa . . .)

Syntex a contestar las demandas enmendadas, los interrogatorios y requerimientos de admisiones sometidos por los peticionarios.[13] El 9 de julio de 1999, Syntex contestó el primer interrogatorio y requerimiento de admisiones.[14]

Mientras tanto, los peticionarios comenzaron la inspección de documentos según lo ordenado por el TPI. Para principios del mes de abril de 2000, Syntex solicitó a los peticionarios que le notificaran la fecha cierta para la cual terminarían la referida inspección. Los demandantes no anunciaron fecha alguna. En vista de ello, mediante carta fechada de 13 de abril de 2000, la recurrida les notificó que a partir de las 5 p.m. del 14 de abril de 2000, daría por concluido el acceso a los expedientes de nómina de los empleados.

Posteriormente, y luego de haber paralizado el descubrimiento unilateralmente, Syntex solicitó al TPI que celebrara una vista con el propósito de dilucidar las razones por las cuales la inspección se había extendido, y para que estableciera un término para su conclusión.[15] La parte peticionaria se opuso a dicha solicitud.[16] Celebrada la vista el 29 de junio de 2000, las partes

_____

**[13] Según lo expresado por el TPI en la "Minuta" de la vista, el Lcdo. Aguiló Vélez, representante legal de Syntex, luego de hacer un recuento del caso, indicó que a su entender la paralización de los procedimientos ordenada por el TPI aún estaba vigente. De esta manera, se desprende de dicha Minuta que Syntex no había permitido el descubrimiento a los peticionarios, a pesar de haber sido ordenado por el TPI el 16 de febrero de 1999. Tampoco contestaron los interrogatorios y requerimientos de admisiones cursados en octubre de 1998.**

**[14] Apéndice del recurso, a las págs. 456-72.**

**[15] Apéndice del recurso, a las págs. 152-56.**

**[16] Íd. a la págs. 157-82.**

estipularon que en un término de 90 días los peticionarios terminarían con el proceso de inspección de los documentos.

Así las cosas, el 1 de septiembre de 2000, los peticionarios presentaron una "Moción Solicitando Orden de Producción".[17] Solicitaron la producción de las hojas de asistencia diaria, los expedientes de nómina, las tarjetas acumulativas de vacaciones, y de licencia por enfermedad, para un período posterior a la presentación de la demanda original de aquellos empleados que continuaron trabajando con el patrono después de la presentación de la misma.[18] En adición, solicitaron reproducir los documentos que habían estado examinando durante los pasados meses.[19]

Syntex se opuso a dicha solicitud mediante una moción presentada el 7 de septiembre de 2000. Argumentó que la Ley Núm. 96, *supra*, en su sección 32, al amparo de la cual reclamaron los peticionarios, limitaba a 10 años el período por el cual se podían retrotraer las reclamaciones de salarios, no proveyendo para reclamar por un período posterior a la presentación de la demanda. En consecuencia, sostuvo la recurrida que cualquier descubrimiento relacionado con períodos posteriores a la presentación de la demanda original sería impertinente. Señalaron, además, que de interesar la parte peticionaria recobrar salarios correspondientes al período posterior a la presentación de la demanda, lo que

---

[17] Íd. a la págs. 183–86.

[18] Íd. a la pág. 184. Los peticionarios argumentaron que la producción de dichos documentos era "verdaderamente necesaria ya que muchos de los demandantes continuaron trabajando para las demandadas Syntex Puerto Rico, Inc. y Syntex (F.P.), Inc., con posterioridad a la radicación de la demanda inicial, y de hecho muchos se acumularon en enmiendas subsiguientes."

[19] Íd. a la pág. 185.

procedía era la presentación de una nueva reclamación que cubriese dicho término.[20]

Mediante Orden de 8 de septiembre de 2000, el TPI ordenó, en primer lugar, la producción de todos los documentos solicitados, incluyendo los que se extendían a un período posterior a la fecha de presentación de la demanda original respecto de aquellos empleados que continuaron trabajando con el patrono, y, en segundo lugar, ordenó poner a la disposición de los demandantes, para su reproducción, la totalidad de los documentos que ya habían sido objeto de inspección por los peticionarios.

Inconforme, Syntex acudió ante el Tribunal de Circuito de Apelaciones (en adelante, "TCA") señalando que incidió el foro de instancia al extender el alcance del descubrimiento solicitado por los peticionarios, y al ordenar la reproducción de los documentos correspondientes a 75 reclamantes por un período de 13 años. Al mismo tiempo, Syntex solicitó la paralización del descubrimiento de prueba hasta tanto el TCA entendiera los planteamientos ante su consideración, lo cual se declaró con lugar.

Mediante Sentencia de 20 de junio de 2002, el TCA revocó la Orden dictada por el TPI. Al así hacerlo, distinguió entre dos categorías de empleados: (1)los 10 empleados que continuaron trabajando para Syntex después de la fecha de presentación de la demanda original; y (2)los empleados que habían cesado en su empleo al momento en que se instó la reclamación contra el patrono.

En relación con la reclamación de los empleados que cesaron en su empleo antes de la presentación de la demanda, el foro

---

[20] Íd. a la pág. 192.

apelativo concluyó que conforme a la sección 32 de la Ley Núm. 96, *supra*, ésta deberá retrotraerse a los 10 años anteriores desde el momento en que cesaron en sus labores. En cuanto a la reclamación de los empleados que aún trabajaban para el patrono al momento de presentarse la demanda original, expresó que su reclamación se limitaría únicamente a los 10 años anteriores a la presentación de la reclamación judicial, lo que ocurrió en el presente caso el 27 de agosto de 1996. Resolvió que no procedía el descubrimiento de manera prospectiva.

Al respecto, expresó el TCA que:

> **"Esta ley se creó para garantizar unos derechos de los trabajadores, no para estrangular los del patrono.** El legislador estableció en aquélla Ley 96, un período de diez (10) años para una reclamación de un trabajador, no reclamaciones al infinito. Hoy la reclamación se limita a solo tres años.
>
> **Lo que pretenden los empleados es insostenible. Pretenden el supuesto de que la reclamación de un empleado que llevaba diez años trabajando con Syntex, para el año 1996, y se encuentra hoy aún trabajando con la firma, se extienda retroactivamente hasta el año 1986, y siga vigente hasta el año 2002, dieciséis años. Ello es impermisible.**
>
> **El empleado que se encuentre en ese supuesto, no está impedido de presentar, hoy, una nueva reclamación en un pleito independiente, para reclamar tres (3) años para atrás como lo permite hoy la Ley Núm. 180, supra."**

Luego de determinar la retroactividad y alcance del descubrimiento de prueba, el TCA concluyó que las reclamaciones de algunos de los empleados estaban prescritas, por lo que procedía la desestimación en contra de éstos.

Así también, el foro apelativo determinó que el foro de instancia erró al permitir de forma genérica el descubrimiento de prueba sin que se establecieran los parámetros de ese proceso como

procedía en derecho, en una situación en dónde había un claro abuso del derecho por parte de los peticionarios.

Inconformes con el curso decisorio seguido por el TCA, el 13 de septiembre de 2002, los peticionarios acudieron vía *certiorari* ante este Tribunal, formulando los siguientes señalamientos de error:

> "(1)Erró el TCA al determinar que las reclamaciones salariales de 10 codemandantes iniciales que continuaron trabajando con el patrono peticionario luego de radicarse la demanda el 27 de agosto de 1996 se limitan a la fecha en que demandaron a Syntex y al sostener que estos 10 demandantes no tienen derecho a descubrir evidencia en posesión del patrono más allá de dicha fecha, resolviendo que las reclamaciones salariales de dichos demandantes por el periodo posterior a la radicación de la demanda deben tramitarse en un pleito posterior independiente, lo cual se solicita se reconsidere.
>
> (2)Erró el TCA al determinar en apelación que la reclamación de algunos de los demandantes-recurridos están prescritas excediendo su jurisdicción apelativa más allá de los errores planteados en el recurso, siendo por demás dicha determinación de prescripción una contraria a derecho, pues la interposición de la demanda inicial interrumpió la prescripción para todos los potenciales demandantes que se acumularon al caso posteriormente mediante enmiendas a la demanda, según la norma sentada en Rivera Castillo v. Municipio de San Juan, 130 D.P.R. 683 (1992) analizada con la norma sentada en Caguas Lumber Yard v. Tribunal Superior, 96 D.P.R. 848(1969), lo cual se solicita se reconsidere.
>
> (3)Erró el TCA al intervenir en la sana discreción del TPI en el ejercicio de su facultad discrecional de regular los procedimientos pautando el descubrimiento de prueba en el caso al revocar la Resolución recurrida del 8 de septiembre de 2000, por la cual se ordenó al patrono demandado-peticionario producir las tarjetas de asistencia, nóminas, expedientes de personal, y otros documentos de los trabajadores recurridos con el exclusivo fin de ser reproducidos por los mismos a su costo, y al sustituir su criterio por el del TPI pautándose en apelación el descubrimiento de prueba en el

caso en lo que a juicio de los trabajadores recurridos es una intervención impermisible del TCA más allá de su facultad revisora como Tribunal Apelativo, pues extendió su jurisdicción más allá de los errores planteados asumiendo el rol del TPI, lo cual se solicita se reconsidere.

(4)Erró el TCA al no reconocer la procedencia en ley de la resolución recurrida bajo la Regla 31.1 de Procedimiento Civil que autoriza y permite la producción de documentos para ser fotocopiados independientemente de que hayan sido previamente producidos e inspeccionados por la parte que interesa copia de los mismos, particularmente cuando la parte que produce los documentos tiene el deber de presentarlos en evidencia el día del juicio y de hechos los ha anunciado en evidencia en el caso, lo cual se solicita se reconsidere."

Mediante Resolución de 25 de octubre de 2002, expedimos el auto solicitado. Contando con el beneficio de la comparecencia de ambas partes estamos en posición de resolver.

II

Atendemos, en primer lugar, el planteamiento de si es procedente el descubrimiento de prueba relacionado con el período posterior a la fecha de presentación de la demanda original, respecto de aquellos 10 empleados que continuaron trabajando para Syntex más allá del 21 de agosto de 1996, fecha en que se presentó la demanda original.

Las reclamaciones formuladas en el caso que nos ocupa, incluyendo las añadidas por las demandas enmendadas, se presentaron ante el TPI antes del 27 de julio de 1999,[21] por lo que

---

[21] **La "Ley de Salario Mínimo" fue derogada por la "Ley de Salario Mínimo, Vacaciones  y Licencia por Enfermedad de**
continúa...

[20] ...continuación
**Puerto Rico", Ley Núm. 180 de 27 de julio de 1998, 29 L.P.R.A. §§ 250 *et seq*., la cual entró en vigor el 27 de julio de 1999.**

(Continúa . . .)

son de aplicación al caso de autos los términos y disposiciones de la anterior Ley de Salario Mínimo.

Como se sabe, las reclamaciones de salarios están revestidas del más alto interés público debido a la importancia que el pago de éstos acarrea para la subsistencia de los obreros y sus dependientes.

Con el objetivo de garantizarles un ingreso mínimo adecuado, y tomando en consideración las pésimas condiciones socio-económicas en que vivía la clase trabajadora a mediados del siglo pasado, nuestra Asamblea Legislativa aprobó la "Ley de Salario Mínimo", *supra*, atemperando así las disposiciones de la Ley Federal de Normas Razonables del Trabajo(*Federal Labor Standards Act*) a la ley local.[22] *Véase* David M. Helfeld, *La Política Laboral*

_____

A partir de la entrada en vigor de la nueva ley, las reclamaciones por salarios, vacaciones o licencia por enfermedad que pueda tener un empleado contra su patrono al amparo de ésta o de cualquier decreto mandatorio prescribirán por el transcurso de 3 años, contados a partir desde el momento de cese en el empleo. 29 L.P.R.A. §250(j)(a). El término se interrumpirá y comenzará a transcurrir nuevamente con la reclamación de la deuda, judicial o extrajudicialmente, por el obrero, su representante, o funcionario del Departamento con facultad para ello y por cualquier acto de reconocimiento de la deuda por el patrono. 29 L.P.R.A. §250(j)(a). A diferencia de la Ley de Salario Mínimo de 1941, la reclamación solo podrá retrotraerse a los 3 años anteriores a la fecha de cese en el empleo.

De otra parte, en aquellos casos en que el empleado se encuentre trabajando con el patrono, éste podrá reclamar los salarios a que tuviere derecho, por cualquier concepto, correspondientes a los 3 años anteriores a la fecha en que se establezca la reclamación judicial. 29 L.P.R.A. §250(j)(b).

[22] La Ley Federal de Normas Razonables del Trabajo fue aprobada con el fin de eliminar las pésimas condiciones de trabajo de los obreros que trabajaban en industrias que participaban en el comercio interestatal. Con la adopción de la citada ley, el Congreso de los Estados Unidos tuvo como norte lograr que la clase trabajadora alcanzara un nivel mínimo de bienestar que por las largas horas de trabajo, y la escasa retribución económica era inasequible. Con tales propósitos en mente, a través de dicho

(Continúa . . .)

*Constitucional del 1952: Sus Principios Esenciales y los Factores que la influenciaron,* 72 Rev.Jur.U.P.R. 143, 150(2003).

Al respecto, la Sección 32 de la Ley de Salario Mínimo disponía que:

> (a)Por el transcurso de tres (3) años prescribirá la acción en reclamación de salarios que pueda tener un empleado contra su patrono al amparo de (la Ley de Salario Mínimo) de los decretos mandatorios ya aprobados o que se aprueben de acuerdo con sus disposiciones, de las órdenes promulgadas por la Junta o al amparo de cualquier contrato o ley.  Para la prescripción de esta acción se contará desde que el empleado cesó en su empleo con el patrono. El término de prescripción antes indicado se interrumpirá y comenzará a transcurrir de nuevo por la reclamación de la deuda de salario al patrono, judicial o extra-judicialmente, por el obrero, su representante o funcionario del departamento con facultad para ello y por cualquier acto de reconocimiento de la deuda por el patrono.

> (b)Cuando el empleado estuviere trabajando con el patrono, la reclamación **solamente incluirá** los salarios a que tuviere derecho el empleado, por cualquier concepto, durante los últimos diez (10)años anteriores a la fecha en que estableciere la acción judicial.

> (c)En el caso de que el empleado hubiere cesado en su empleo con el patrono, la reclamación **solamente incluirá** los últimos diez (10) años anteriores a la fecha de su cesantía.

Como se puede observar, bajo la Ley de Salario Mínimo, a todo empleado que recibiera una compensación inferior a la establecida por ley se le confería el derecho a cobrar el importe correspondiente mediante una acción civil.  Dicha ley, a su vez, confería al Secretario del Trabajo y Recursos Humanos la facultad de iniciar la acción correspondiente, bien por iniciativa propia o a petición de los empleados interesados.

---

**estatuto, se estableció un salario mínimo por hora y una jornada máxima semanal de trabajo.  29 U.S.C.A. §202, 206(a) y 207(a).**

Así también, los incisos (b) y (c) del referido estatuto distinguían entre aquellos empleados que continuaban prestando sus servicios para el patrono al momento de instarse la reclamación, de aquellos que habían cesado en sus empleos con éste.

Con relación a estos últimos, el inciso (a) establecía que la acción para reclamar salarios prescribiría a los tres años desde el momento en que cesaran en el empleo, pero éstos sólo podían reclamar **el importe correspondiente a los 10 años anteriores a la fecha de cese en el empleo.**

En cuanto a los que aún continuaban trabajando para el patrono, éstos solo podían reclamar los salarios correspondientes a los 10 años anteriores **desde la fecha en que instaran la reclamación judicial.** *Véase* A. Acevedo Colom, Legislación Protectora del Trabajo Comentada, Ramallo Bros., San Juan, 1era ed., 1988, a las pág. 60-62.

En el caso que nos ocupa, la controversia se centra en la interpretación del inciso (b) de la Ley de Salario Mínimo, *supra*, en cuanto a si un empleado que continúa trabajando para el patrono durante la pendencia del litigio en reclamación de salarios puede reclamar las retribuciones devengadas y no pagadas, por el período posterior a la fecha de presentación de la demanda, o, en cambio, si dicha reclamación debe limitarse únicamente al importe correspondiente a los 10 años anteriores desde el momento en que se instó la demanda.[23] En otras palabras, nos corresponde identificar cuál es el alcance de la frase "solamente incluirá" en dicho inciso; precisar si fue la intención legislativa referirse

---

[23] *Véase* nota 19, *ante*.

solamente al período previo a la interposición de la reclamación judicial o si se puede reclamar también por el período posterior.

De una simple lectura del citado precepto, vemos que no se hace referencia de clase alguna en cuanto a lo que sucede con las reclamaciones de salarios (causas de acción) que surjan durante la pendencia del litigio. Surge claramente del lenguaje de dicho estatuto las limitaciones existentes a la retroactividad de las reclamaciones, pero nada contiene respecto a las que se originen posteriormente. Es decir, nos encontramos ante una situación en la que existe un vacío legislativo, por lo que nos corresponde auscultar la verdadera intención o fin social que tuvo nuestra Asamblea Legislativa al momento de adoptar el estatuto en cuestión.

En reiteradas ocasiones, hemos expresado que al acometer nuestra función de interpretación de las leyes debemos siempre considerar cuáles fueron los propósitos perseguidos por la Asamblea Legislativa al aprobarlas. Nuestras determinaciones deberán atribuirle un sentido que asegure el resultado que originalmente se quiso obtener, en forma tal que la interpretación se ajuste al fundamento racional o fin esencial de la ley y a la política pública que la inspira. *Vázquez v. ARPE*, 128 D.P.R. 513, 523 (1991); *Chase Manhattan Bank v. Mun. de San Juan*, 126 D.P.R. 759, 766 (1990); *Morales v. Adm. Sistemas de Retiro*, 123 D.P.R. 589 (1989). Es nuestra obligación fundamental en estos casos imprimirle efectividad a la intención legislativa, propiciando de

esta forma la realización del propósito que persigue la ley.[24] *Díaz Marín v. Municipio de San Juan*, 117 D.P.R. 334 (1986).

Así también, hemos expresado que en la interpretación de un estatuto debe evitarse una aplicación literal del mismo que resulte en consecuencias absurdas, siempre que se pueda dar a la ley una interpretación razonable consistente con el propósito legislativo. *Díaz Marín v. Municipio de San Juan*, supra, a la pág. 334; *Pardavco, Inc. v. Scrio de Hacienda*, 104 D.P.R. 65 (1975); *Esso Standard Oil v. A.P.P.R.,* 95 D.P.R. 772 *(1968)*; *Pueblo v. Seda*, 82 D.P.R. 719 (1961).

De una lectura del Informe rendido por la Comisión Conjunta de la Asamblea Legislativa que recomendó la aprobación de la Ley de Salario Mínimo, vemos que la política pública que inspiró la aprobación la sección 32 de la referida ley era, de una parte, establecer un balance entre la protección de los intereses y derechos de los trabajadores para que se les compensaran en su totalidad las labores rendidas, y, de otra parte, **fijar un límite a las acciones y al período de tiempo que pueda cubrir en una reclamación de ésta índole**. *Véase* 8, Diario de Sesiones, 7 de mayo de 1956, a la pág 1072. Con ello, se pretendió limitar las reclamaciones salariales de los obreros, quienes hasta esa fecha podían reclamar retroactivamente salarios devengados por períodos indefinidos de tiempo.

Al respecto, dicho Informe expresó que:

---

[24] **Sólo hay una regla de interpretación que es absolutamente invariable y ésta es que debe descubrirse y hacerse cumplir la verdadera intención y deseo del poder legislativo. R.E. Bernier y J.A. Cuevas Segarra, Aprobación e Interpretación de las leyes en Puerto Rico, San Juan, Pubs. JTS, 1987, a las págs. 241-42.**

"La Sección 32(c), que tiene reacción **[sic]** directa con el inciso(a), dispone que en caso de que el empleado hubiese cesado en su empleo al tiempo de presentar su reclamación, éste podrá incluir solamente los últimos cinco años**[léase 10 años]** anteriores a la fecha de la cesantía. Esta disposición significa que cualquier reclamación de salarios instada por un ex-empleado contra su antiguo patrono podrá referirse a un período no mayor de los cinco años anteriores a la fecha en que el querellante cesó en sus servicios.

El inciso(c) varía fundamentalmente la ley actualmente en vigor, **al amparo de la cual se pueden presentar acciones por un período ilimitado que puede incluir el total de años de servicio del trabajador querellante para el patrono querellado, irrespectivamente de que haya trabajado 25 ó 30 años para el mismo patrono.** (citas omitidas)

**Las dificultades inherentes a situaciones como ésta— tales como obtener evidencia necesaria, conseguir los récords relativos a los diferentes períodos, así como los testigos materiales, etcétera—han dejado demostrado que se hace necesario incluir en la ley una fórmula más práctica que sin afectar fundamentalmente los intereses y los derechos de los trabajadores, proteja en forma adecuada el interés público**."(énfasis suplido)

De esta forma, con la aprobación del citado estatuto se le brindaron mayores garantías de debido proceso de ley al patrono, protegiéndolo de reclamaciones al infinito, y se incentivó que los trabajadores reclamaran activamente sus derechos. En esencia, las limitaciones de tiempo a las que se hace referencia en el segmento transcrito surgieron con el fin de proteger al patrono contra reclamos a destiempo por parte del obrero. En el pasado, las reclamaciones que los obreros hacían por servicios prestados por más de 20 o 30 años situaban al patrono en una posición desventajosa, pues en muchas de las ocasiones no contaba con los expedientes de dichos empleados, o por el transcurso del tiempo no

podía localizar los testigos materiales para una adecuada defensa de su caso, colocándolos en una posición de total incertidumbre.

La situación es distinta cuando un empleado reclama sus derechos por un período posterior a la presentación de la demanda. Si bien le aplicará la limitación de 10 años para reclamar retroactivamente por las prestaciones debidas, no deberá impedírsele de que puede reclamar por aquéllas causas de acción surgidas una vez presentada la demanda. Desde la fecha de presentación de la demanda en su contra, ya el patrono conoce en qué consiste la reclamación del obrero, por lo que estaría en una mejor posición de recopilar la evidencia necesaria y con mayor facilidad podría localizar los testigos, no teniendo los mismos problemas de debido proceso de ley que tendría un patrono al cual demandan por una reclamación de más de 20 años. No se trata ya de causas de acción o reclamaciones que surgieron hace muchos años, sino aquellas que ocurren ya el patrono conociendo que tiene un pleito instado en su contra. De interpretarse de otro modo, no incentivaríamos al patrono a que atienda e investigue cualquier situación en la que alegadamente se violenten los derechos de un trabajador, y por ende, tome las medidas correctivas necesarias para mejorar la situación del trabajador.

Por otro lado, ni en el Informe de la Comisión Conjunta, ni en las discusiones de ambos proyectos ante la Cámara y el Senado, se debatió si las reclamaciones de dichos empleados podían extenderse por períodos posteriores a la presentación de la demanda. En cambio, nada en el lenguaje del estatuto sugiere que no se pueda reclamar por el período posterior a la presentación de ésta.

Es un principio reiterado en nuestro ordenamiento jurídico que las leyes y reglamentos laborales, deben ser interpretados liberalmente o de la manera más favorable al obrero. *Almodóvar v. Margo Farms del Caribe, Inc.*, 148 D.P.R. 103 (1999); *Dorante v. Wrangler*, 145 D.P.R. 408 (1998); *Torres v. Starkist*, 134 D.P.R. 1024 (1994); *Agosto Serrano v. F.S.E.*, 132 D.P.R. 866 (1993).

Concluímos, por tanto, que la intención legislativa fue la de establecer un límite de retroactividad a las reclamaciones, pero no impedir que el trabajador que continuara trabajando pudiese reclamar más allá de la fecha en que presentó la demanda. Es menester aclarar que ni el legislador ni nadie tienen forma de anticipar si los patronos que son demandados en casos de reclamaciones salariales continuarán o no en violación de los derechos de los trabajadores una vez interpuestas reclamaciones judiciales en su contra. Ello es incierto y especulativo. De igual manera, no puede exigirse a los trabajadores que anticipen en una demanda las sumas adicionales que les adeudarán por concepto de horas extras, si ni tan siquiera saben si el patrono va a continuar violando las leyes laborales.[25]

Por ende, no permitir la enmienda a la reclamación de salarios por el período posterior a la presentación de la demanda original atentaría contra el principio de celeridad y economía procesal que permea nuestro ordenamiento jurídico. **No obstante, el**

---

**[25] Para fines ilustrativos, señalamos los casos de cobro cánones de arrendamiento, en donde el arrendatario aún luego de la presentación de la demanda continúa ocupando la propiedad sin pagar los cánones al arrendador. Lo que procede, entonces, es la presentación de evidencia de la deuda antes y después de la interposición de la demanda hasta el mismo día del juicio para recuperar aquellas rentas vencidas.**

**tribunal de instancia podrá establecer, una vez completado el descubrimiento de prueba por las partes, la fecha límite hasta la cual se podrá reclamar en el caso, ello sin perjuicio de que de continuar subsiguientemente el patrono violando las leyes salariales aplicables, los reclamantes puedan presentar otro pleito.**

Examinada la primera controversia en el caso de marras, vemos que 10 de los empleados que figuran en el "Anejo A" de la demanda original continuaron prestando sus servicios para Syntex. Son estos Marco A. Arroyo Román, María De Jesús Laboy, John Félix Ortiz, Carmen W. Lebrón, Edward López Peña, Felicita Méndez Rivera, Juan A. Molina, Teresa Peña Flores, Luis Orlando Rodríguez Roque, y Luis A. Rodríguez Velázquez.[26]

Por lo tanto, éstos podrán descubrir aquella prueba relacionada a los 10 años anteriores a la interposición de la demanda, o sea hasta el 21 de agosto de 1986, y aquella prueba relacionada a todas las causas de acción surgidas durante el período posterior a la presentación de la demanda original, o sea, por el período posterior al 21 de agosto de 1996. Para ello, deberán enmendar la demanda original acumulando las reclamaciones o causas de acción surgidas entre la fecha de la demanda original y la fecha en que culmine el descubrimiento de prueba.

En cuanto a las reclamaciones (causas de acción) surgidas luego del 27 de julio de 1999, fecha en que entró en vigor la "Ley de Salario Mínimo, Vacaciones y Licencia por Enfermedad de Puerto Rico", *supra*, para aquellos 10 empleados que continuaron

---

[26] **Apéndice del recurso, a las págs. 73-75.**

trabajando para Syntex, le serán de aplicación los nuevos términos prescriptivos dispuestos en dicha ley.[27]

### III

Atendemos, en segundo lugar, el planteamiento de los peticionarios en cuanto a que ninguna de las reclamaciones de los trabajadores estaban prescritas. Aducen los peticionarios que la interposición de la demanda original al amparo del Art. 13 de la Ley Núm. 379, *supra*, tuvo el efecto de interrumpir el período prescriptivo en beneficio de los potenciales trabajadores miembros de "la clase" tal como sucede cuando se tratan de certificar pleitos de clase, bajo la Regla 20 de Procedimiento Civil.[28]

La controversia resultante entre ambas disposiciones de ley se circunscribe a determinar si una reclamación al amparo del Art.

---

[27] En cuanto los empleados cuyos nombres figuran en los Anejos "A-1" y "A-2", debemos aclarar que las respectivas demandas enmendadas fueron presentadas por los peticionarios el 8 de julio de 1998 y el 7 de diciembre de 1998, respectivamente. Lo que significa que tendrán derecho a descubrir prueba y a reclamar salarios por los 10 años anteriores a la fecha de presentación de sus respectivas demandas.

[28] **Ambos estatutos, la Regla 20 de Procedimiento Civil y el Art. 13 de la Ley Núm.379, tienen sus contrapartes en la jurisdicción federal. *Véase* R. 23(b)(3), Fed. Rules Civ. Proc., 28 U.S.C., R. 23(b)(3) y 29 U.S.C.A. §216(b). Por ello, al analizar la controversia antes nos acudiremos a manera ilustrativa a los análisis e interpretaciones que han hecho algunas cortes federales de la Ley Federal de Normas Razonables del Trabajo y las Reglas Federales de Procedimiento Civil.**

**Constituye una norma reiterada en nuestro ordenamiento jurídico, que cuando un estatuto es adoptado de una ley extranjera o de otra jurisdicción, se presume que se adopta con la interpretación que se le ha dado hasta ese momento en la jurisdicción de donde procede. *Pueblo v. Rivera*, 7 D.P.R. 332,353(1904); *García v. Northern Assurance Co.*, 92 D.P.R. 245, 253-54(1965). Dichas decisiones tienen fuerza persuasiva para nuestros tribunales. *Pueblo v. Dolce*, 105 D.P.R. 422, 428-29(1977). *Hernández Agosto v. López Nieves*, 114 D.P.R. 602 (1983).**

13 de la Ley Núm. 379, *supra*, puede tratarse como si se tratara de un pleito de clase, bajo la Regla 20 de Procedimiento Civil.[29] Veamos.

El Art. 13 de la Ley de Horas y Días de Trabajo, *supra*, dispone en lo pertinente, que:

> "La reclamación judicial podrá establecerla uno o varios empleados por y a nombre suyo o de ellos y de otros empleados que estén en circunstancias similares; Disponiéndose, que después de iniciada judicialmente la reclamación, ésta podrá ser transigible entre las partes, con la intervención del Secretario del Trabajo y Recursos Humanos o cualesquiera de los abogados del Departamento, designado por dicho Secretario y la aprobación del Tribunal."

De la lectura del citado precepto, podemos colegir que uno o varios empleados podrán iniciar una reclamación judicial por salarios devengados no pagados, así como por horas extras trabajadas, por sí o en representación de varios empleados que se encuentren en circunstancias similares. *Véase además*, 29 USCA §216(b).[30] De igual manera, el Secretario del Trabajo o a quien

---

[29] Como se sabe, las reglas de procedimiento civil son aplicables siempre y cuando no se lesionen los derechos sustantivos que las leyes laborales conceden a los trabajadores. La Sección 6 del Artículo V de la Constitución del Estado Libre Asociado de Puerto Rico dispone que "el Tribunal Supremo adoptará, para los tribunales, reglas de evidencia y de procedimiento civil y criminal, que no menoscaben, amplíen o modifiquen los derechos sustantivos de las partes."

**continúa...**

[28] **...continuación**
Asimismo, en ocasiones anteriores hemos expresado que para delimitar el ámbito de aplicación de un estatuto o de unas reglas de procedimiento hay que recurrir en primera instancia a las leyes especiales, las cuales establecen los derechos sustantivos de los trabajadores. *Piñero v. A.A.A.*, 146 D.P.R. 890 (1998).

[30] **El citado precepto legal es similar a la sección 216(b) de la Ley Federal de Normas Razonables del Trabajo. No obstante, a diferencia de la legislación local, el estatuto federal contiene una disposición que establece como requisito para el empleado que**

(Continúa . . .)

éste asigne podrá representar a los empleados en cualquier reclamación de esta naturaleza.

En una ocasión anterior, tuvimos la oportunidad de interpretar el alcance de dicha disposición al compararla con la antigua Regla 20 de Procedimiento Civil.[31] *Véase Caguas Lumber Yard v. Tribunal Superior*, 96 D.P.R. 848 (1969). En dicha oportunidad, aclaramos que ambos estatutos proveen para dos procedimientos con iguales propósitos, pero distintos en sus requisitos y en sus efectos. Uno que proviene de las Reglas de Procedimiento Civil, *supra*, con ciertos requisitos para incluir en una acción a reclamantes que, por su cantidad y otras circunstancias, es más práctico certificarlos como clase ***y para quienes la sentencia que pudiere recaer afectará a todos por igual, salvo que soliciten su exclusión ("opt-out").*** En éste, hay un solo proceso, en el que la pretensión es única, pero tiene que ser formulada por varias personas conjuntamente, lo que conduce a una pluralidad de partes, pero sin que ello altere la existencia de un único proceso, una única reclamación y una única solución.

---

vaya a formar parte del pleito, el prestar su consentimiento por escrito y presentarlo ante la Corte. 29 U.S.C.A. sec. 216(c).

[31] La antigua Regla 20.1 de Procedimiento Civil, en sus incisos (a),(b) y (c) permitía tres tipos de acciones de clase. La clasificación de cada una dependía de las relaciones jurídicas que existían entre los miembros de una misma clase. En el caso de *Caguas Lumber Yard v. Tribunal Superior*, 96 D.P.R. 848 (1969), este Tribunal denominó a la acción de clase del inciso (a) como la "verdadera acción o pleito de clase"; a la del inciso (b) la denominó como la híbrida y la de la letra (c) se conoció como "la espuria". Encontró el Tribunal que el Art. 13 de la Ley Núm. 379, supra, era armonizable con la acción de clase conocida como "espuria", pero reconoció algunas diferencias entre ambos preceptos. Posteriormente, al enmendarse las reglas de Procedimiento Civil, los incisos (b) y (c) fueron derogados.

El otro, un procedimiento que surge de una ley especial, con el propósito específico de reclamar a un patrono cantidades no pagadas, que aunque provee para la inclusión ("opt-in") de varios reclamantes, **los efectos de la sentencia afectarán sólo a aquéllos que sean expresamente incluidos en el pleito.** *Caguas L. Y., Inc. v. Tribunal Superior, supra*, a la pág. 852; *Véase además*, *Groshek v. Babcock & Wilcox Tubular Products Div.*, 425 F. Supp. 232 (1977).* [32] En consecuencia, el efecto que produce esta acumulación es la unión de varios procesos para efectos de tramitarlos en uno sólo, de tal manera que en un mismo procedimiento y en una única sentencia, aunque con pronunciamientos independientes para cada actor, se resuelven las acciones de todos los trabajadores demandantes.

Una de las ventajas que podemos destacar del Art. 13 la Ley Núm. 379, *supra*, es que se consagra terminantemente el derecho de uno o más empleados a instar la acción judicial a nombre suyo o de

---

[32] **En el caso de** *LaChapelle v. Owens-Illinois, Inc.,* **513 F.2d 286, 288 (5th Cir. 1975) reconociendo esta diferencia entre ambos estatutos el tribunal expresó que:**

> **"There is a fundamental, irreconcilable difference between the class action described by Rule 23 and that provided for by FLSA s 16(b). In a Rule 23 proceeding a class is described; if the action is maintainable as a class action, each person within the description is considered to be a class member and, as such, is bound by judgment, whether favorable or unfavorable, unless he has 'opted out' of the suit. Under s 16(b) of FLSA, on the other hand, no person will be bound by or may benefit from judgment unless he has affirmatively 'opted into' the class; that is, given his written, filed consent. Sims v. Parke Davis & Co.,** 334 F.Supp. 774, 780-81 E.D.Mich.), aff'd 453 F.2d 1259 (6th Cir. 1971), cert. denied 405 U.S. 978, 92 S.Ct. 1196, 31 L.Ed.2d 254 (1972). It is crystal clear that § 16(b) precludes pure Rule 23 class actions in FLSA suits. **Groshek v. Babcock and Wilcox Tubular Products Division 425 F.Supp. 232, 233 (D.C.Wis. 1977)."**

ellos y de otros empleados que estén en circunstancias similares, **independientemente del factor numérico necesario para constituir la clase**, a diferencia de la exigencia contenida en la Regla 20 de Procedimiento Civil. *Caguas L. Y., Inc*, *supra*, a la pág. 854. Simplemente se hace una invitación al empleado para formar parte de un pleito; no está obligado a formar parte del mismo, ni estará afectado por la decisión que recaiga en su día.

Asimismo, la Ley Núm. 379, *supra*, dispone que para desistir o transigir la acción se requiere de la aprobación del tribunal, y la intervención del Secretario del Trabajo, requisito que no está contenido en la Regla de Procedimiento Civil. Ello es indispensable para la protección de los intereses de los obreros. Dicha regla tampoco exige la adecuada representación de todos los empleados que estén en circunstancias similares a la de los empleados comparecientes.

Así pues, debemos concluir que la "acción de clase" dispuesta en la Ley de Horas y Trabajo, *supra*, no es una "verdadera acción de clase", según la definen las Reglas de Procedimiento Civil vigentes, sino una acción representativa, de acumulación permisible de partes, con distintos requisitos y distintos efectos. A tono con lo anterior, los empleados que pretendan ser incluidos en "la clase" pueden acumularse como parte en el pleito ya instado contra el patrono o pueden llevar una reclamación independiente. Como mencionáramos anteriormente, su derecho a reclamar no quedará perjudicado por la decisión que recaiga en su día en el caso. *Caguas L. Y., Inc. v. Tribunal Superior*, *supra*, a las págs. 855–56.

Asimismo, los términos prescriptivos establecidos para presentar **la acción en reclamación de salarios, no se interrumpen con la presentación de una acción representativa** al amparo del Art. 13 de la Ley Núm. 379, *supra*; o sea, **los términos prescriptivos para aquellos trabajadores que optaron por no incluirse a la demanda continúan transcurriendo.**[33]

No es de aplicación al caso de autos la norma establecida por este Tribunal en *Rivera Castillo v. Municipio de San Juan*, 130 D.P.R. 683 (1992). Los hechos del mencionado caso son claramente distinguibles del que ocupa nuestra atención el día de hoy. La controversia objeto de la reclamación en *Rivera Castillo*, *supra*, era una susceptible de ser tramitada como un pleito de clase. Sin embargo, el TPI, en su amplia discreción, determinó no certificar como tal.[34]

---

[33] **De hecho, a modo ilustrativo, a igual conclusión ha llegado el peso de la jurisprudencia federal. Véase *Husserl, Inc. v. Newman*, 25 F.R.D. 264, 267 (S.D.N.Y. 1960); *Athas v. Day*, 161 F.Supp. 916,919 (Colo. 1958) donde se expresó que:** "…the spurious class action, however, involves separate causes of action, and is a matter of efficiency to avoid multiplicity of actions. Consequently, each plaintiff must be able to avoid the bar of the statute of limitations without reference to other causes of action."**; *Nagler v. Admiral Corp.*, 248 F. 2d 319 (2d. Cir. 1957); *Pennsylvania Co. for Insurances v. Deckert*, 123 F.2d. 979 (3rd Cir. 1941).**

[34] **La situación del caso de *Rivera Castillo*, *supra*, se originó con la presentación de una demanda en daños y perjuicios por parte de los comerciantes de la Plaza del Mercado de Río Piedras en contra del Municipio de San Juan, y la Autoridad de Energía Eléctrica, a raíz de un incendio ocurrido en las instalaciones de la mencionada plaza. Los comerciantes-demandantes solicitaron la tramitación del caso al amparo de la Regla 20 de Procedimiento Civil, 32 L.P.R.A. Ap. III, R.20, con el propósito de certificar el mismo como un pleito de clase. Luego de varios trámites procesales, el TPI denegó la certificación. En razón de ello, el Municipio de San Juan solicitó la desestimación de la demanda en cuanto a aquellos comerciantes-demandantes incluidos luego de la denegatoria del pleito de clase, bajo el fundamento de que dichas reclamaciones se encontraban prescritas. El TPI declaró sin lugar**

(Continúa . . .)

Por el contrario, el presente caso al ser una reclamación al amparo de la legislación laboral no puede ser tramitada como un pleito de clase, sino más bien como una acción representativa o de acumulación permisible. El permitir otro análisis vulneraría los derechos creados por la legislación laboral, a favor tanto de los obreros como del patrono. Adviértase que cada trabajador tiene su récord de trabajo, el cual es distinto del de los demás. Cada obrero trabajó un número distinto de horas, así como devengó y recibió unos salarios y beneficios distintos. Por tanto, la presentación de una demanda, por un trabajador, no brindaría una notificación adecuada sobre el historial de trabajo o las posibles reclamaciones que puedan tener otros empleados contra el mismo patrono.

Por lo tanto, a la luz del trasfondo doctrinal previamente señalado, actuó correctamente el TCA al determinar que las reclamaciones de algunos empleados estaban prescritas.

En cuanto a la **demanda original**, los señores Diego Serrano Maldonado y Perry Torres González ofrecen como su fecha de cese en el empleo octubre de 1994 y junio de 1994, respectivamente. Éstos presentaron sus reclamaciones antes del 21 de agosto de 1996, por lo que no estaban prescritas. Sin embargo, tres de los empleados, Andrés Carrasco Colón, Teresa Flores Medina, y Olga M. Rodríguez

---

**la solicitud, expresando que la demanda no se encontraba prescrita para aquellos comerciantes-demandantes que se unieron al pleito dentro de un año desde la denegatoria de la tramitación del pleito como uno de clase. De esa determinación acudió ante nos el Municipio de San Juan aduciendo que fue errónea la determinación del TPI "al considerar interrumpido el término prescriptivo con la interposición de la demanda de pleito de clase que no fuera certificada..." *Íd*. a la pág. 691. No obstante, este Tribunal confirmó la resolución recurrida. Como se puede observar los hechos del presente caso son claramente distinguibles de los del referido caso.**

Rosado, no ofrecen la fecha en la que cesaron en sus empleos con Syntex.  Es desde esa fecha que depende que sus reclamaciones estén o no prescritas, por lo cual el tribunal de instancia deberá determinar la fecha correspondiente luego de escuchar a las partes.

En cuanto a los 60 empleados de la **primera demanda enmendada,** 53 de estos reclamantes ofrecen su fecha de cese en el empleo el año 1997, por lo que al presentarse sus reclamaciones el 8 de julio de 1998, éstas estaban a tiempo, no prescritas.

No obstante, las reclamaciones del señor Carlos Camuas Osorio, quien cesó en su empleo en 1994; José Luis Castro Cruz quien cesó en 1994; Cruz Díaz Sánchez quien cesó en 1993; Diego Serrano Maldonado en 1994 y Gustavo O. Delgado Flores quien cesó en 1992 **están prescritas.  Estos trabajadores tenían 3 años para presentar su reclamación y no lo hicieron.**[35] De igual manera, como mencionáramos previamente, sus reclamaciones presentadas fuera de término tampoco se retrotraen a la fecha de la presentación de la demanda original, pues ésta no tuvo el efecto de interrumpir los términos prescriptivos, ya que ellos no formaron parte de la reclamación original.

Por último, en cuanto a esta primera demanda enmendada se refiere, debemos señalar que los señores Nelson Castro Rodríguez y Mario Santiago Montañez ofrecen el año de 1995 como fecha de cese en su empleo.  Las reclamaciones en sus respectivos casos dependerán de si el mes y día en que cesaron, fue después del 8 de

---

[35] **No surge del expediente de este Tribunal que estos empleados hayan reclamado la deuda judicial o extrajudicialmente o que el patrono haya reconocido ésta, lo que hubiese tenido el efecto de interrumpir la prescripción de sus acciones.**

julio de 1995, lo que significaría que sus reclamaciones podrían estar prescritas.

Resta por considerar, los reclamantes de la **segunda demanda enmendada**. Cuatro de los reclamantes, Víctor Beltrán Acosta, Ángel Chariez, María A. Rivera Santiago y Eduardo Rodríguez Rodríguez, ofrecen como fecha de cese en el empleo el año de 1996, y sólo uno, Lillian Alfonso Perdomo, ofrece el año de 1997, por lo que sus reclamaciones fueron presentadas dentro del término de 3 años establecido en ley.

IV

Por estar íntimamente relacionados, procedemos a discutir conjuntamente el tercer y cuarto señalamiento de error.

Nuestras Reglas de Procedimiento Civil, 32 L.P.R.A. Ap. III, proveen para que el alcance del descubrimiento de prueba sea uno amplio y liberal, de manera que se logren soluciones justas, rápidas y económicas a las controversias existentes entre las partes. [36] *Lluch* v. *España Service Station*, 117 D.P.R. 729, 744 (1986). Con tales objetivos en mente, se ha diseñado un esquema de descubrimiento de prueba extrajudicial, el cual fomenta una mayor cooperación y flexibilidad entre las partes. *Medina v. M.S. & D. Química P.R., Inc.*, 135 D.P.R. 716, 728 (1994). Un amplio y

---

[36] Con ello, se pretende precisar las cuestiones en controversia, acelerar los procedimientos, propiciar las transacciones, evitar sorpresas indeseables en el juicio y perpetuar la prueba. *Alfonso Brú* v. *Trane Export, Inc, res. el 20 de septiembre de 2001;* 155 D.P.R. _ (2001), 2001 T.S.P.R. 129, 2001 J.T.S. 132; *Ades* v. *Zalman*, 115 D.P.R. 515 (1984); *Sierra* v. *Tribunal Superior*, 81 D.P.R. 554 (1959); Véase además, R. Hernández Colón, <u>Derecho Procesal Civil</u>, Michie de P.R., Inc, San Juan, 1era ed, pág. 220.

adecuado descubrimiento de prueba antes del juicio facilita la tramitación de los pleitos y evita inconvenientes, sorpresas e injusticias que surgen cuando las partes ignoran, hasta el día de la vista, las cuestiones y los hechos que en realidad son objeto del litigio. *Medina v. M.S. & D. Química P.R., Inc.*, 135 D.P.R.716.

Por otra parte, los tribunales tomarán un rol más activo en el manejo de todo lo relacionado con el descubrimiento de prueba en aquellos casos que envuelvan cuestiones complejas o en aquellos que impliquen cuestiones de interés público. Regla 37.1 de Procedimiento Civil, *supra*; *Véase además, Medina v. M.S. & D. Química P.R., Inc.*, 135 D.P.R. 716 (1994); *Vellón v. Squibb Mfg., Inc.,* 117 D.P.R. 838, 849-50 (1986).

Así también, corresponde a los foros judiciales velar porque el descubrimiento de prueba no sea perturbador, hostil, opresivo o cause gastos o molestias indebidas. Es por ello que las Reglas de Procedimiento Civil proveen para que los tribunales expidan órdenes protectoras en los casos que procedan, con el propósito de proteger a la parte o persona con relación a la cual se utiliza el descubrimiento, de hostigamiento u opresión, así como de cualquier gasto o molestia indebida. 32 L.P.R.A. Ap. III R. 23.2. Los tribunales intervendrán en el proceso de descubrimiento de prueba, bien sea para emitir órdenes protectoras o guías, tomando en consideración los siguientes factores: (1)la multiplicidad de partes; (2)el monto de las cuantías reclamadas; (3)el extenso y complicado descubrimiento de prueba; (4)la complejidad de las controversias planteadas; y (5) los recursos de las partes, entre

otros. *Véase e.g. Medina Morales v. Merck, Sharp & Dohme Química de Puerto Rico*, 135 D.P.R. 716 (1994); *Amaro González v. First Federal Savings Bank*, 132 D.P.R. 1042 (1993); *Ortiz Rivera v.ELA*, 125 D.P.R. 65 (1989); *Véase además*, J.A. Cuevas Segarra, Tratado de Derecho Civil, Tomo I, Publicaciones JTS, 2000, a la págs. 492-95.

De determinar que procede intervenir, los tribunales podrán establecer, entre otras cosas, unos controles tales como reuniones frecuentes con los abogados de las partes, delimitar las controversias, **supervisar el descubrimiento de prueba** y cambiar el orden de la prueba en la vista, de ser necesario. *Íd* a la pág. 495.

Por otro lado, en cuanto a los derechos de las partes durante el descubrimiento de prueba, la Regla 31.1 de Procedimiento Civil, 32 L.P.R.A. Ap.III R.31.1, dispone que:

> "Además de tener derecho a que se produzca cualquier documento o cosa para ser inspeccionado con relación a un examen bajo la Regla 27, o interrogatorios bajo la Regla 30, una parte podrá notificar a otra, sujeto a lo dispuesto en la Regla 23.2 una solicitud para que: **(1)produzca y permita inspeccionar, copiar o fotografiar, por o a nombre de la parte promovente, determinados documentos, papeles, libros, cuentas, cartas, fotografías, objetos o cosas tangibles, de naturaleza no privilegiada, que constituyan o contengan evidencia relacionada con cualquiera de las materias que estén dentro del alcance del examen permitido por la Regla 23.1 y que estuvieren en o bajo su posesión, custodia o dominio...**"

La citada regla cobra vital importancia en los casos de reclamaciones salariales. El descubrimiento de prueba en el ámbito laboral permite que quien pretenda demandar solicite con carácter previo al proceso, el examen de cualquier documento,

cuando su conocimiento resulte imprescindible para fundamentar su demanda; siendo el caso más claro el de los empleados que traten de descubrir las cantidades dinerarias que les adeuden.

A éstos les corresponde establecer mediante preponderancia de la prueba, no solo que realizaron las labores por concepto de la cual instan las reclamaciones, sino que también deberán acreditar el número de horas regulares y extras por las que realizaron los trabajos. *Sierra v. Eastern Sugar Associates*, 71 D.P.R. 888 (1950); *Scrio. Del Trabajo v. Vélez*, 86 D.P.R. 585 (1962).

El patrono, por su parte, podrá presentar las nóminas que conserve en su poder para controvertir lo alegado por los trabajadores. Las copias de las nóminas constituirán evidencia *prima facie* sobre su contenido. *Pueblo v. Echevarría Rodríguez*, 128 D.P.R. 299 (1991). Por tal razón, para refutar lo alegado por el patrono, y fundamentar adecuadamente sus contenciones, el trabajador deberá tener derecho a fotocopiar las nóminas y aquéllos documentos que sean pertinentes.

Finalmente, se hace imperativo recordar la doctrina establecida en nuestra jurisdicción de que los tribunales apelativos, de ordinario, no intervendremos con las determinaciones que hagan los juzgadores de hechos, salvo que medie prejuicio, pasión, parcialidad o error manifiesto. *Rivera Durán v. Banco Popular*, res. el 2 de octubre de 2000, __D.P.R.__(2000), 2000 J.T.S. 156, a la pág. 175; *Quiñónes López v. Manzano Pozas*, 141 D.P.R. 139 (1996); *Pueblo v. Bonilla Romero*, 120 DPR 92(1987). Esto es fundamental por cuanto son ellos quienes están al tanto de todos los trámites y diligencias solicitadas por las partes.

En el caso de autos, el TPI ordenó a la recurrida poner a disposición de los peticionarios para su reproducción todos los documentos de nómina, tarjetas de asistencia, y récords de personal.[37]  Sin embargo, el TCA revocó al foro de instancia al determinar que no procedía la reproducción de los mismos en cuanto a los demandantes originales, por entender que tuvieron una cantidad considerable de tiempo para ello.  Al respecto, el foro apelativo concluyó que:

> "(a)El descubrimiento de prueba consistente de examinar y fotocopiar los expedientes de los 15 demandantes que figuran en la demanda original, que tuvieron 2 años de oportunidad para descubrir prueba, está concluido para los efectos de este pleito."[38]

Erró el TCA al así hacerlo.  El TCA equivocadamente concluyó que los peticionarios habían tenido más de dos años para descubrir dicha prueba.  Del expediente del caso de autos, surge que el descubrimiento se vio interrumpido en varias ocasiones por un espacio mayor a dos años.[39]  En razón de ello, no encontramos que

---

[37] Apéndice del recurso, a las págs. 199-200.

[38] Apéndice del recurso, a las págs. 294-95.

[39] Los procedimientos de descubrimiento de prueba se paralizaron el 27 de enero de 1997, a petición de Syntex, en lo que el TPI resolvía la cuestión de si el pleito se certificaría como uno de clase. *Veáse* Parte "I" de la Opinión, a la pág. 4.  Luego, surge de una vista celebrada por el foro de instancia el 6 de abril de 1999 que Syntex se negó a contestar unos interrogatorios y requerimientos de admisiones basándose en que el descubrimiento aún continuaba paralizado. *Íd*. a la pág. 6, nota 11.  Ello, a pesar del TPI haber levantado la paralización de los procedimientos el 16 de febrero de 1999.  Posteriormente, una vez reanudado dicho descubrimiento, en el mes de abril de 2000, la compañía recurrida unilateralmente negó el acceso de los peticionarios a los expedientes de nómina de los empleados hasta tanto el foro de instancia indicara la fecha en que debía terminar el descubrimiento. *Íd*. a la pág. 7.  Así las cosas, el 29 de

(Continúa . . .)

hubiese abuso de discreción o arbitrariedad en la Orden del TPI de 8 de septiembre de 2000. El foro de instancia se encontraba en mejor posición para dirimir este asunto, y para conceder períodos de tiempo adicionales que como hemos visto eran necesarios dada la gran cantidad de veces que se detuvo el descubrimiento de prueba.

Por tanto, concluimos que los peticionarios podrán reproducir a su propio costo las hojas de asistencia, las nóminas, tarjetas acumulativas de vacaciones y licencia por enfermedad, solicitudes y/o acuerdos para reducir el período de tomar alimentos, y cualquier documento pertinente por el período comprendido entre el 21 de agosto de 1986 y el 21 de agosto de 1996.

Por otra parte, concluimos que actuó correctamente el TCA al emitir unas guías que regularan el procedimiento de descubrimiento de prueba que por años se ha tratado de conducir sin éxito alguno. Se trata de un caso complejo, donde existe una gran cantidad de partes y reclamaciones, lo que amerita la intervención del tribunal para la más pronta solución del mismo. Así pues, son razonables las guías dirigidas a limitar a un período de 60 días para dar por concluido el descubrimiento de prueba respecto a los

---

**julio de 2000, las partes estipularon que en un término de 90 días se terminaría el descubrimiento de prueba.** *Íd.* **No obstante, el 1 de septiembre de 2000, ante una solicitud de los peticionarios para inspeccionar los documentos relacionados al período posterior a la presentación de la demanda original, Syntex negó el acceso a los nuevos documentos requeridos.** *Íd.* **a las págs. 8-9.**

**Por tanto, dada la gran cantidad de paralizaciones, el número de partes envueltas, la complejidad del caso, y el derecho que le asiste a los peticionarios para descubrir todo lo relacionado a las reclamaciones que surgieron durante la pendencia del pleito, entendemos que actuó correctamente el TPI al extender el término para inspeccionar los documentos correspondientes.**

peticionarios de las demandas enmendadas de 8 de julio de 1998 y de 7 de diciembre de 1998. Al respecto el TCA expresó que:

> "...(b)Se concederá un plazo no mayor de sesenta (60) días a los abogados de los (60) demandantes incluidos en la enmienda a la demanda de 8 de julio de 1998, y los cinco (5) incluidos (sic) la enmienda del 7 de diciembre de 1998, para examinar y/o fotocopiar, bajo las condiciones que aquí establecemos, los sesenta y cinco (65) expedientes de personal de estos empleados.
>
> (c)En ese plazo de sesenta (60) días, ambas partes se pueden someter mutuamente mecanismos de descubrimiento de prueba, respecto a todos los reclamantes incluyendo los quince originales, siempre que su culminación, o sea la sumisión de las contestaciones en los casos de los interrogatorios, no excedan de treinta preguntas, ni del plazo de 60 días para ser contestados."[40]

No obstante, añadimos lo ya expresado anteriormente en esta Opinión, en cuanto a que deberá concederse acceso, dentro del término de 60 días, a los 10 peticionarios de la demanda original, los cuales continuaron prestando sus servicios para el patrono, para inspeccionar y reproducir los documentos pertinentes **correspondientes al periodo posterior al 21 de agosto de 1996**.

Por los fundamentos antes expuestos, revocamos parcialmente la Sentencia del Tribunal de Circuito de Apelaciones, en cuanto resolvemos que los 10 peticionarios que continuaron prestando sus servicios para el patrono podrán reproducir los documentos correspondientes al período comprendido entre 1986 a 1996, y podrán reclamar y descubrir prueba relacionada a las sumas adeudadas por el período posterior a la presentación de la demanda original. Se confirma en cuanto a los demás extremos. Se

---

[40] **Apéndice del recurso, a las págs. 294-95.**

devuelve el caso al Tribunal de Primera Instancia para que continúe los procedimientos conforme a lo aquí dispuesto.

Se dictará sentencia de conformidad.


                        BALTASAR CORRADA DEL RÍO
                              Juez Asociado

EN EL TRIBUNAL SUPREMO DE PUERTO RICO


Olga M. Rodríguez Rosado y otros

  Demandantes Peticionarios

          v.
                                         CC-2002-681

SYNTEX (F.P.), Inc.; SYNTEX
Puerto Rico, Inc.

  Demandados Recurridos


SENTENCIA

San Juan, Puerto Rico, a 30 de septiembre de 2003.

Por los fundamentos expuestos en la Opinión que antecede, la cual se hace formar parte íntegra de la presente, revocamos la Sentencia del Tribunal de Circuito de Apelaciones, en cuanto resolvemos que los diez (10) peticionarios que continuaron prestando sus servicios para el patrono podrán reproducir los documentos correspondientes al período comprendido entre 1986 a 1996, y podrán reclamar y descubrir prueba relacionada a las sumas adeudadas por el período posterior a la presentación de la demanda original. Se confirma en cuanto a los demás extremos. Se devuelve el caso al Tribunal de Primera Instancia para que continúe los procedimientos conforme a lo aquí dispuesto.

Así lo pronunció y manda el Tribunal y certifica la Secretaria del Tribunal Supremo. El Juez Asociado señor Hernández Denton concurre y disiente con opinión escrita. El Juez Asociado señor Fuster Berlingeri está conforme con la Opinión, excepto con el acápite III en cuanto a que algunas de las reclamaciones estaban prescritas, de cuyo dictamen de prescripción disiente. La Juez Asociada señora Naveira de Rodón no intervino.


                    Patricia Otón Olivieri
                 Secretaria del Tribunal Supremo

EN EL TRIBUNAL SUPREMO DE PUERTO RICO


Olga M. Rodríguez Rosado
y Otros

   Demandantes Peticionarios

   v.                              CC-2002-681      Certiorari

Syntex (F.P.), Inc.
Syntex Puerto Rico, Inc

   Demandados Recurridos


Opinión Concurrente y Disidente emitida por el Juez Asociado señor
Hernández Denton

San Juan, Puerto Rico, a 30 de septiembre de 2003.

El presente recurso contiene dos controversias principales. En primer lugar, debemos determinar si las disposiciones de la Ley de Salario Mínimo proveen para el reclamo prospectivo de las sumas adeudadas en concepto de salarios para demandantes que aún continúen trabajando para el patrono demandado. Por otro lado, debemos examinar además si la interposición de una reclamación al amparo del Art. 13 de la Ley de Horas y Días de Trabajo, Ley Núm. 379 de 15 de mayo de 1948, según enmendada, 29 L.P.R.A. sec. 282, que provee para que un empleado pueda presentar la acción por sí y en nombre de otros empleados, tiene el efecto de interrumpir la prescripción de las acciones en

beneficio de aquellos trabajadores que se unan con posterioridad al pleito.

Concurrimos con la Opinión del Tribunal en cuanto concluye que la sección 32 de la Ley de Salario Mínimo,[41] vigente al momento de los hechos, la cual limita a los diez (10) años anteriores a la presentación de la demanda la reclamación de salarios para aquellos empleados que continúen trabajando para el patrono demandado, no es impedimento para el reclamo prospectivo de las sumas adeudadas en concepto de salarios, por salarios adeudados que surjan luego de la presentación de la demanda.

Sin embargo, disentimos de la decisión de la Mayoría de que las causas de acción de algunos de los demandantes estaban prescritas resolviendo un asunto que aún no había sido dilucidado por el Tribunal de Primera Instancia. Además, entendemos que la presentación de la demanda inicial en una acción representativa según consagrada en el Art. 13 de la Ley de Horas y Días de Trabajo, *supra*, al igual que en los pleitos de clase, tiene el efecto de interrumpir la prescripción de las acciones en beneficio de aquellos trabajadores que conforman la posible clase.

I

El 26 de agosto de 1996, Olga Rodríguez Rosado y otros presentaron una demanda por sí y en representación de 500 miembros de una clase, compuesta por empleados y ex empleados de Syntex su patrono y aquí demandado, por violaciones a la antigua Ley de

---

[41] **Ley Núm. 96 de 26 de junio de 1956, 29 L.P.R.A. Sec. 246 (d). Derogada por la Ley Núm. 180 de 27 de julio de 1998, la cual rige las acciones presentadas luego de transcurrido un año de vigencia.**

Salario Mínimo, *supra*.  En síntesis, solicitaron sumas adeudadas por trabajo realizado y no compensado.[42]

En su contestación a la demanda, Syntex, además de negar la deuda reclamada, alegó que los demandantes no cumplían ni con los requisitos de la Regla 20 de las de Procedimiento Civil, 32 L.P.R.A. Ap. III, ni con los del Art. 13 de la Ley de Horas y Días de Trabajo, *supra*, para establecer un pleito de clase o una acción representativa por lo que no procedía su certificación.  A esos efectos, el tribunal limitó el descubrimiento de prueba al necesario para determinar la procedencia de la certificación de la clase y paralizó todo descubrimiento ya iniciado, hasta tanto no se dilucidara dicha controversia.

El 8 de julio de 1998 y el 7 de diciembre de 1998 la demanda fue enmendada para incluir nuevos reclamantes.[43]  Con la segunda enmienda, los demandantes desistieron de su intención de tramitar el pleito como uno de clase al amparo de la Regla 20 de las de Procedimiento Civil.  Así, los empleados y ex empleados de Syntex prosiguieron el pleito al amparo de la acción representativa provista en el Art. 13 de la Ley de Horas y Días de Trabajo, *supra*.

En vista de que ya no se tenía que determinar la procedencia de la certificación de la clase según los requisitos de la Regla 20 de Procedimiento Civil, el tribunal ordenó a Syntex a cumplir

---

[42] **Reclamaron compensaciones por trabajo realizado durante los periodos para: (1) tomar alimentos; (2) en el séptimo día de descanso; (3) durante vacaciones no concedidas o no disfrutadas consecutivamente o fraccionadas indebidamente. Solicitaron además aquellas sumas no pagadas como: (1) bono de navidad; (2) créditos al plan de pensión y; (3) las sumas a parearse bajo los planes de ahorro.**
[43] **Se incluyeron 60 nuevos empleados demandantes y cinco nuevos reclamantes respectivamente.**

con los mecanismos de descubrimiento de prueba utilizados por los demandantes.

Los demandantes, en específico aquellos empleados que continuaron trabajando para el patrono después de presentada la demanda, solicitaron acceso a las nóminas, registros de entradas y salidas, tarjetas acumulativas de vacaciones y licencias de enfermedad, entre otros, para un periodo posterior a la presentación de la demanda. A dicha solicitud Syntex se opuso.[44] El tribunal inferior ordenó la producción de todos los documentos solicitados incluyendo aquéllos referentes a un periodo posterior a la fecha en que se presentó la demanda.

Oportunamente, Syntex acudió ante el Tribunal de Circuito de Apelaciones, quien revocó la determinación del tribunal de instancia al concluir que no procedía el descubrimiento de forma prospectiva.[45] El Tribunal de Circuito de Apelaciones resolvió además, sin que le fuera señalado como error pues ni siquiera fue una controversia vista y resuelta por el Tribunal de Primera Instancia en la orden objeto de revisión, que las reclamaciones de

_____

[44] Argumentó que la ya derogada Ley de Salario Mínimo, *supra*, proveía para que una reclamación se pudiera retrotraer diez años previo a la presentación de la demanda o diez años previo a la fecha de terminación del empleado reclamante. Dicha ley limitaba a diez años el periodo por el cual se podían retrotraer las reclamaciones de salarios, sin proveer para reclamar por un periodo posterior a la presentación de la demanda. Por esta razón, argumentaron que cualquier descubrimiento relacionado con un periodo posterior a la presentación de la demanda original es improcedente. Señalaron además que, de querer la parte demandante recobrar dinero correspondiente al periodo posterior a la presentación de la demanda, lo que procedía era la presentación de una nueva reclamación que cubriera dicho periodo.

[45] El tribunal concluyó que conforme a la ley aplicable al caso, la reclamación de los empleados que aún trabajaban para el patrono al momento de la presentación de la demanda, se limitaría a los diez años anteriores a la presentación de la demanda y que toda reclamación posterior debía presentarse como pleito independiente.

algunos de los empleados estaban prescritas por haber sido instadas luego de transcurrido el término prescriptivo provisto para estas acciones. Así, concluyó que procedía la desestimación de dichas acciones.

Oportunamente, acudieron ante nos los empleados demandantes quienes señalaron, entre otras cosas, que incidió el tribunal apelativo al determinar que las acciones de algunos de éstos estaban prescritas, excediendo su jurisdicción apelativa no sólo por esto no haber sido señalado como error sino porque ni siquiera dicha contención había sido resuelta por el Tribunal de Primera Instancia en la resolución objeto de revisión. Sostuvieron además que dicha determinación es contraria a derecho debido a que la interposición de la demanda inicial interrumpió la prescripción para todos los potenciales demandantes que se acumularon al caso posteriormente.

La Opinión del Tribunal resuelve que la acción representativa provista por el Art. 13 de la Ley de Horas y Días de Trabajo, *supra*, es distinta al pleito de clase provisto en la Regla 20 de las de Procedimiento Civil, *supra*. Por esta razón, concluye que, a diferencia de la presentación de un pleito de clase que interrumpe los términos prescriptivos para todos los posibles miembros de la clase, la presentación de una acción representativa al amparo del susodicho Art. 13 no interrumpe el término prescriptivo para aquellos trabajadores que no se incluyeron en la demanda original y que se unieron al pleito posteriormente. Esta conclusión no solamente es contraria al espíritu remediador de Horas y Días de Trabajo sino que también es incompatible con los

propósitos de las reglas procesales que facilitan las acciones de clase en Puerto Rico.

II

El pleito de clase es un mecanismo creado con el propósito de fomentar la economía judicial. El mismo, disminuye el número de pleitos que deben resolver los tribunales en torno a una misma controversia, evita la posibilidad de reclamaciones múltiples y repetitivas, además de permitir hacer justicia a personas agraviadas que no se sienten motivadas a litigar. Rivera Castillo v. Municipio de San Juan, 130 D.P.R. 683 (1992); Cuadrado Carrión v. Romero Barceló, 120 D.P.R. 434 (1988).

La figura fue originada en los tribunales de equidad para permitirles entender en acciones donde el gran número de interesados en la litigación hacía impracticable su acumulación como partes de conformidad con las reglas procesales vigentes. Rivera Castillo v. Municipio de San Juan, supra; J.A. Cuevas Segarra, Práctica Procesal Puertorriqueña, Procedimiento Civil, San Juan, Pubs J.T.S., Vol. II, (2000); Hansberry v. Lee, 311 U.S. 32 (1940). Su propósito principal fue evitar, mediante la intervención de un representante de todos los litigantes que constituyen la clase, la multiplicación de la tarea de adjudicar una sola cuestión de hecho y derecho presentada por múltiples partes. De esta forma, no sólo se simplifica el proceso judicial, sino que se promueve la economía procesal y la solución justa, rápida y económica de la controversia. Regla 1 de Procedimiento Civil, 32 L.P.R.A. Ap. III.

El pleito de clase está consagrado en la Regla 20 de las de Procedimiento Civil. 32 L.P.R.A. Ap. III. La misma contiene una

serie de requisitos que hacen posible la tramitación de estos pleitos.[46] Esta acción constituye la forma o mecanismo de litigio por representación que permite que, en un sólo pleito, el tribunal considere aquellas cuestiones de hecho y de derecho que son comunes para un grupo numeroso de personas. A través de este mecanismo, se evita la multiplicidad de litigios y la potencialidad de las sentencias inconsistentes. Cuadrado Carrión v. Romero Barceló, *supra.*

La presentación de un pleito de clase, aun cuando la misma no sea certificada como tal, tiene el efecto de interrumpir los términos prescriptivos, no sólo para aquéllos que comparecieron como demandantes, sino para todos los posibles integrantes de la clase. Así lo resolvimos en Rivera Castillo v. Municipio de San Juan, *supra.* En aquella ocasión, analizamos los propósitos de la figura de la prescripción y concluimos que los mismos quedan atendidos con la presentación de la demanda inicial en un pleito de clase.

La prescripción, entre otras cosas, evita las sorpresas y las consecuencias que genera la resucitación de reclamaciones viejas, tales como la pérdida de evidencia, la pérdida de testigos o dificultad para contactarlos, por mencionar algunas. Rivera Castillo v. Municipio de San Juan, *supra*; Culebra Enterprizes Corp. v. E.L.A., 127 D.P.R. 943, 950 (1991). Ya anteriormente estimamos que con la presentación de la demanda inicial en un pleito de clase quedan adecuadamente atendidos los intereses

---

**[46] Además de establecer los requisitos para conformar la clase, regula la tramitación de la acción, provee para la certificación del mismo, y establece normas para su transacción y para su desistimiento. 32 L.P.R.A. Ap. III, R.20.1, R 20.2, R. 20.3, R. 20.4 y R. 20.5.**

protegidos por la figura de la prescripción. La parte demandada está debidamente avisada de la existencia de una clase que comparte una reclamación evitándose las dificultades que surgen con la resucitación de reclamaciones viejas. Por esta razón, resolvimos que cuando se presenta una demanda como un pleito de clase, aún cuando el tribunal deniegue la certificación de la clase, se interrumpe la prescripción de las reclamaciones para todos los potenciales miembros de la alegada clase. Rivera Castillo v. Municipio de San Juan, *supra.*

Nuestra Asamblea Legislativa ha reconocido el beneficio de los pleitos de clase. Así lo ha demostrado al crear, en adición al pleito de clase provisto por la Regla 20 de las de Procedimiento Civil, *supra*, otros pleitos de clase para asuntos específicos.[47] También integró a la Ley de Horas y Días de Trabajo, *supra*, una disposición donde permite una acción representativa para reclamar los derechos concedidos por dicha pieza legislativa. En la misma, el legislador estableció un mecanismo mediante el cual uno o varios empleados pueden instar una acción en contra de su patrono, tanto en su carácter individual como en carácter representativo de otros empleados que estén en circunstancias similares independientemente del factor numérico de la clase. Caguas Lumber Yard v. Tribunal Superior, 96 D.P.R. 848 (1969). En lo que nos concierne el Art. 13 dispone lo siguiente:

---

[47] **Por ejemplo: (a)La Ley Núm. 118 de 25 de junio de 1971, le reconoció tanto a los consumidores como al Estado y sus dependencias un derecho a presentar una acción en daños y perjuicios a nombre de los consumidores. 32 L.P.R.A. 3341; (b) Esa misma ley le reconoce a los comerciantes y consumidores el derecho a instar un pleito de clase a nombre de éstos al amparo de la Ley de Monopolios del E.L.A. 32 L.P.R.A. 3342.**

Todo empleado que reciba una compensación menor que la fijada en las secs. 271 a 288 de este título para horas regulares y horas extras de trabajo o para el período señalado para tomar los alimentos tendrá derecho a recobrar de su patrono mediante acción civil las cantidades no pagadas, más una suma igual por concepto de liquidación de daños y perjuicios, además de las costas, gastos y honorarios de abogados del procedimiento...

...**La reclamación judicial podrá establecerla uno o varios empleados por y a nombre suyo o de ellos y de otros empleados que estén en circunstancias similares**... *Énfasis suplido.*

Dicho artículo creó una acción representativa similar a la provista por la Regla 20 de las de Procedimiento Civil, pero sin tener que cumplir con el factor numérico exigido por el pleito de clase o el requisito de la adecuada representación de todos los empleados que estén en circunstancias similares. Ambas disposiciones proveen una vía para que unos pocos entablen una acción en representación de un grupo numeroso de personas con la diferencia que en la acción representativa provista por el Art. 13 se exime a los empleados a cumplir de requisitos exigidos por el tradicional pleito de clase.

## III

En el caso de autos, el Tribunal de Circuito de Apelaciones determinó que la acción de varios de los codemandantes estaba prescrita, asunto que no había sido ventilado por el tribunal sentenciador. A pesar de ello, dicha determinación fue confirmada por la Opinión del Tribunal al concluir que la presentación de la demanda inicial en una acción representativa al amparo Art. 13, a diferencia de lo que ocurre en el pleito de clase, no interrumpe el término prescriptivo para todos los posibles miembros de la clase.

En primer lugar, disentimos de dicha conclusión por estimar que el tribunal apelativo no debió resolver un asunto que todavía no había sido objeto de determinación por parte del Tribunal de Primera Instancia.[48] Además estimamos que la presentación de la demanda inicial en una acción representativa al amparo del Art. 13 de la Ley de Horas y Días de Trabajo, *supra*, al igual que en los pleitos de clase, interrumpe el término prescriptivo para todos los posibles miembros de la clase.

La Opinión del Tribunal hace una distinción entre el pleito de clase y la acción representativa, provista por el Art. 13, con el propósito de justificar su conclusión de que, a diferencia de lo que sucede en los pleitos de clase, en los casos de las acciones representativas la presentación de la demanda inicial no interrumpe el término prescriptivo para todos los posibles miembros del grupo de empleados representados.[49] No obstante estar de acuerdo con la distinción hecha por la Opinión del Tribunal,

---

[48] Debemos señalar que el caso de autos llegó a la atención del foro intermedio a través de un recurso de certiorari mediante el cual se solicitó la revisión de una orden interlocutoria. Dicha orden se limitaba a resolver unos asuntos referentes al descubrimiento de prueba. Nada de lo dispuesto en la susodicha orden se refería, de forma alguna, a la prescripción de las acciones de algunos de los demandantes.

[49] Por ejemplo, señala que el pleito de clase tiene unos requisitos que la acción representativa dispuesta en el Art. 13 no tiene. Así señaló que en la acción representativa los empleados tienen la opción de unirse al pleito o de llevar su acción de forma independiente, alternativa que no tienen en un pleito de clase. Por esta razón, en estos casos la sentencia sólo afecta a los que expresamente se incluyeron en la demanda.  Se señala además que la acción representativa del Art. 13 no tiene los requisitos de numerosidad que exigen para su tramitación los pleitos de clase. También señala los requisitos del Art. 13 para la transacción o el desistimiento de estos pleitos tales como la aprobación del tribunal y la intervención del Secretario del Trabajo.  Por último, destaca que en el pleito representativo según consagrado en el Art. 13 no se exige el requisito de representación adecuada exigido en los pleitos de clase.

estimamos que la misma no tiene como consecuencia que la presentación de la demanda en la acción representativa, no tenga el efecto de interrumpir los términos prescriptivos para todo posible integrante de la clase trabajadora.

La conclusión llegada por este Tribunal en Rivera Castillo v. Municipio de San Juan, *supra*, donde resolvimos que la presentación del pleito de clase interrumpía el término prescriptivo para las acciones de todos los posibles miembros de la clase, se basó en que se atendían adecuadamente los intereses perseguidos por la figura de la prescripción. La presentación de la demanda inicial en un pleito representativo, al amparo del Art. 13 de la Ley de Horas y Días de Trabajo, cumpliría con el mismo propósito. Por esta razón, no se justifica la distinción hecha por la Opinión del Tribunal. Aunque reconocemos que ambas acciones son distinguibles, estimamos que tanto en el pleito de clase como en la acción representativa, con la presentación de la demanda inicial quedan atendidos los propósitos de la prescripción, por lo que el efecto sobre los términos prescriptivos de las acciones de los posibles miembros de la clase debe ser el mismo.

En el pleito representativo, al amparo del Art. 13, con la presentación de la demanda inicial, el patrono queda avisado de la reclamación existente tanto de los empleados que figuran como demandantes como de aquellos en cuya representación se instó la reclamación. La demanda les sirve de aviso para recopilar aquella evidencia testifical o documental necesaria para su defensa, evitando la sorpresa y las dificultades que surgen con la resucitación de reclamaciones viejas. Por tanto, no existe razón que justifique que la presentación de la demanda inicial en un

pleito representativo, no tenga el mismo efecto interruptor sobre los términos prescriptivos de las acciones de todos los posibles empleados y ex empleados allí representados, que tiene la presentación de la demanda inicial en un pleito de clase. Estimamos que en ambos casos con la presentación de la demanda se atiende el propósito perseguido por la figura de la prescripción de que los demandados estén avisados a tiempo de las reclamaciones en su contra, evitando la resucitación de reclamaciones viejas y las consecuencias que esto conlleva. Por lo tanto, lo resuelto en Rivera Castillo v. Municipio de San Juan, *supra*, respecto al efecto de la presentación de la demanda inicial en los pleitos de clase sobre los términos prescriptivos de los posibles miembros de la clase, debe aplicar a los pleitos representativos al amparo del Art. 13 de la Ley de Horas y Días de Trabajo. La presentación de la demanda inicial debe tener el efecto de interrumpir el término prescriptivo para las acciones de todos los posibles empleados o ex empleados representados.

Por último, la decisión de la Mayoría tiene el efecto de limitar el alcance de este remedio para los obreros que reclaman porque se les compense por las horas trabajadas. No existe razón que justifique la distinción hecha por la Opinión del Tribunal entre los pleitos de clase al amparo de la Regla 20 de las de Procedimiento Civil y la acción representativa al amparo del Art. 13 de la Ley de Horas y Días de Trabajo para así no aplicarle lo resuelto por este Tribunal en torno al efecto de la presentación del pleito de clase sobre el término prescriptivo de los posibles miembros de la clase. Si además recordamos que éste es precisamente el tipo de reclamación que resulta onerosa formularla

individualmente y que la ley de 1998 reduce el periodo de una reclamación, la decisión emitida hoy constituye un golpe severo a un sector que este Tribunal debe proteger. Por ende, disentimos.

Federico Hernández Denton
Juez Asociado
