ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL GENERAL DE JUSTICIA
TRIBUNAL DE APELACIONES
**PANEL ESPECIAL**

| | | |
|---|---|---|
| **NECCO, INC.**<br>DEMANDANTE(S)-RECURRIDA(S)<br><br>v.<br><br>**MARIEL MACHADO RUIZ, ET ALS.**<br>DEMANDADA(S)<br>**JORGE MACHADO GUZMÁN**<br>DEMANDADA(S)-PETICIONARIA(S)<br><br>**JORGE MACHADO RUIZ, ET ALS.**<br>TERCERO DEMANDADO(S) | **KLCE202300315** | *CERTIORARI*<br>procedente del Tribunal de Primera Instancia, Sala Superior de **SAN JUAN**<br><br>Caso Núm.:<br>**SJ2018CV10602 (807)**<br><br>Sobre:<br>Cobro de Dinero |
| **MEDICAL EXPRESS RENTAL EQUIPMENT, INC.**<br>DEMANDANTE(S)-RECURRIDA(S)<br><br>v.<br><br>**MARIEL MACHADO RUIZ, ET ALS.**<br>DEMANDADA(S)<br><br>**JORGE MACHADO GUZMÁN**<br>DEMANDADA(S)-PETICIONARIA(S) | | *CERTIORARI*<br>procedente del Tribunal de Primera Instancia, Sala Superior de **SAN JUAN**<br><br>Caso Núm.:<br>**SJ2018CV10603 (807)**<br><br>Sobre:<br>Cobro de Dinero |

Panel integrado por su presidenta, la Jueza Cintrón Cintrón, el Juez Pagán Ocasio y la Juez Barresi Ramos.

*Barresi Ramos*, juez ponente.

### S E N T E N C I A

En San Juan, Puerto Rico, hoy día 22 de mayo de 2025.

Comparece ante este Tribunal de Apelaciones, el señor **JORGE MACHADO GUZMÁN** (señor **MACHADO GUZMÁN**) mediante *Petición de Certiorari* interpuesta el 27 de marzo de 2023. En su recurso, nos solicita que revisemos tres (3) *Órdenes* decretadas el 22 de febrero de 2023 por el Tribunal

Número Identificador
SEN2025 _____

de Primera Instancia (TPI), Sala Superior de San Juan.[1] Mediante dichos dictámenes, el tribunal *a quo* le requirió al señor **MACHADO GUZMÁN** cumplir con el descubrimiento de prueba; exponer su posición sobre la solicitud de imposición de sanciones; y le concedió quince (15) días.

Exponemos el trasfondo fáctico y procesal que acompañan a la presente controversia.

- I -

El 7 de diciembre de 2018, **NECCO, INC.** (**NECCO**) instó una *Demanda* sobre cobro de dinero; enriquecimiento injusto; violación de deberes de fiducia y sentencia declaratoria contra la señora **MARIEL MACHADO RUIZ** (señora **MACHADO RUIZ**), su esposo, el señor Juan Guillermo Soto Fonalledas y la Sociedad Legal de Bienes Gananciales compuesta por ambos; el señor **MACHADO GUZMÁN**, su esposa, la señora **HILDA RUIZ ACEVEDO** (señora **RUIZ ACEVEDO** QEPD) y la Sociedad Legal de Bienes Gananciales compuesta por estos.[2] En esencia, razonó que las partes demandadas recibieron pagos indebidos de salarios, gastos y beneficios por parte de **NECCO**. Concretamente, arguyó que la señora **MACHADO RUIZ** percibió unos $121,409.95; y la señora **RUIZ ACEVEDO** recibió $26,829.78 en concepto de salarios y pagos por aportaciones patronales al seguro social. Por ende, requirió que estas devolvieran el dinero. Asimismo, **NECCO** argumentó que el señor **MACHADO GUZMÁN** tomó decisiones en violación a su deber de fiducia que le desangró financieramente. **NECCO** esbozó que el señor **MACHADO GUZMÁN** debía reembolsarle la cantidad de $148,239.73 por concepto de daños y pérdidas; así como una suma no menor de $125,000.00 por concepto de costos de oportunidad e ingresos dejados de percibir, más los intereses.

**NECCO** interpeló que se emitiera una sentencia declaratoria reconociendo que: (1) para vender sus acciones a terceros, la señora **MACHADO RUIZ** debía obtener el consentimiento de todos los accionistas y

---

[1] Las referidas órdenes fueron notificadas y archivadas en autos el 24 de febrero de 2023. Apéndice de la *Petición de Certiorari*, págs. 846– 851.
[2] *Íd.*, págs. 1– 40.

después debía cumplir con el proceso establecido en el Reglamento de **NECCO**; y (2) la corporación no le debía cantidad de dinero en concepto de dividendos a la señora **MACHADO RUIZ**.[3]

En la misma fecha, el 7 de diciembre de 2018, **MEDICAL EXPRESS RENTAL EQUIPMENT, INC. (MEDICAL EXPRESS)** entabló una *Demanda* conteniendo las mismas causas de acción contra las mismas partes.[4] Entre otras cosas, **MEDICAL EXPRESS** le reclamó al señor **MACHADO GUZMÁN** la devolución de los pagos recibidos del año 2003 al año 2017, por concepto de salarios, reembolso de gastos y aportaciones al seguro social y Medicare. Destacó que la suma que recaudó el señor **MACHADO GUZMÁN** sin trabajar ni proveer servicios a la compañía ascendió a $267,567.86.[5]

Luego de varios trámites procesales, el 18 de febrero de 2022, **NECCO** y **MEDICAL EXPRESS** le remitieron al señor **MACHADO GUZMÁN** una *Notificación de Requerimiento de Documentos*.[6] En resumen, pidieron una serie de documentos relacionados a planillas de contribución sobre ingresos; estados financieros; estados de cuentas bancarias; estados de cuenta de tarjetas de crédito; pólizas de vida; títulos y licencias de vehículos de motor; títulos y licencias de embarcaciones; formularios W- 2; y formularios 480.6(A) y (D) desde el año 1995 hasta el 2016.[7] Evaluadas las comparecencias de ambas partes, el 1 de noviembre de 2022, se promulgó una *Orden* señalándole al señor **MACHADO GUZMÁN** que debía cumplir con los requerimientos de **NECCO** y **MEDICAL EXPRESS**.

En desacuerdo, el señor **MACHADO GUZMÁN** recurrió ante este foro intermedio, y el 20 de diciembre de 2022, este Tribunal de Apelaciones dictó *Sentencia* mediante la cual dispuso que "[l]a totalidad de la información

---

[3] La *Demanda* fue enmendada el 30 de julio de 2022. Apéndice de la *Petición de Certiorari*, págs. 342– 360.
[4] *Íd.*, págs. 41- 52.
[5] La totalidad reclamada por **MEDICAL EXPRESS** ascendía a $649,914.24 más los intereses, cantidad que alegan que fue entregada a la senora **MACHADO RUIZ**, la senora **RUIZ ACEVEDO** y el señor **MACHADO GUZMÁN**.
[6] Apéndice de la *Petición de Certiorari*, págs. 241- 243.
[7] El 9 de marzo de 2022, el señor **MACHADO GUZMÁN** presentó sus objeciones y contestaciones al requerimiento solicitado. Apéndice de la *Petición de Certiorari*, págs. 255- 271.

financiera solicitada por la parte recurrida dentro de la naturaleza del pleito que nos ocupa no es pertinente" y procedió a **limitar el alcance del descubrimiento de prueba en este caso a lo estrictamente pertinente**.[8] Además, le requirió al foro primario concretar una orden dirigida al Departamento de Hacienda para que entregara una certificación acreditativa del hecho de si incluyó como ingreso en sus planillas de 2003 al 2016 las cantidades alegadas en el pleito de autos. El 9 de enero de 2023, NECCO y MEDICAL EXPRESS presentaron *Moción de Reconsideración* ante este foro.[9] En consecuencia, el 17 de enero de 2023, se expidió *Resolución* declarando no ha lugar la *Moción de Reconsideración*.[10]

Posteriormente, el 22 de enero de 2023, NECCO y MEDICAL EXPRESS cursaron un *Requerimiento de Producción de Documentos* al señor MACHADO GUZMÁN.[11] En dicho *Requerimiento,* solicitaron: (1) la evidencia de todas las rentas pagadas por NECCO y MEDICAL EXPRESS que recibió el señor MACHADO GUZMÁN; (2) copia de todos los estados de cuenta bancario para las tarjetas de crédito expedidas a favor del señor MACHADO GUZMÁN; (3) estados de cuenta a nombre del señor MACHADO GUZMÁN; (4) cheques cancelados; (5) copia de pólizas de vida en el carácter personal del señor MACHADO GUZMÁN; (6) copia o títulos de registración de embarcaciones inscritas a nombre del señor MACHADO GUZMÁN; (7) copias de los formularios W– 2 recibidas por el señor MACHADO GUZMÁN de NECCO y MEDICAL EXPRESS; (8) copia de las declaraciones informativas recibidas por el señor MACHADO GUZMÁN de NECCO y MEDICAL EXPRESS; entre otros documentos, todos desde el año 2003 hasta el año 2016.

---

[8] Apéndice de la *Petición de Certiorari*, págs. 628– 640. Se expidió el auto de *certiorari* revocando la *Orden* que le imponía sanciones al señor MACHADO GUZMÁN por negarse a entregar sus **planillas de contribución sobre ingresos** como parte del descubrimiento de prueba, específicamente, por ser muy amplia.

[9] Apéndice de la *Petición de Certiorari*, págs. 642– 649.

[10] *Íd.*, págs. 650– 653. Posteriormente, el 15 de febrero de 2023, NECCO y MEDICAL EXPRESS acudieron ante el Tribunal Supremo mediante *Solicitud de Certiorari*. El 17 de marzo de 2023, se proveyó no ha lugar al petitorio presentado. Apéndice de la *Petición de Certiorari,* págs. 779- 806; 818- 841; y 845.

[11] *Íd.*, págs. 736-740.

El 23 de enero de 2023, se celebró una audiencia sobre el estado de los procedimientos (*Status Conference*). En dicha audiencia, entre otras cosas, se ordenó al señor **MACHADO GUZMÁN**:

> [Q]ue si en el término de quince días a partir de hoy, no produce todo aquel documento que no se produjo, se le impondrán sanciones de $40.00, diarios en sellos de Rentas Internas de suspensión, por cada día de atraso en el cumplimiento por la producción de los documentos que no tienen nada que ver con las planillas.[12]

Dadas las circunstancias, el 25 de enero de 2023, el señor **MACHADO GUZMÁN** presentó una *Moción Solicitando Reconsideración*.[13] Manifestó que le correspondía a **NECCO** y **MEDICAL EXPRESS** revelar sobre la comunicación del Departamento de Hacienda en la cual informó que no emitían certificaciones que conllevaran análisis particulares de partidas de las planillas de los contribuyentes al Tribunal de Apelaciones. Toda vez que, al presentar su recurso ante el Tribunal de Apelaciones, el Departamento de Hacienda no había cursado su misiva.

En respuesta, el 29 de enero de 2023, **NECCO** y **MEDICAL EXPRESS** presentaron *Oposición a la Moción de Reconsideración [Entrada en SUMAC 446]* en la cual expusieron que debía mantenerse en vigor la orden dado que el señor **MACHADO GUZMÁN** "indujo a error al Tribunal de Apelaciones con planteamientos no ajustados al estado de los procedimientos".[14] El 2 de febrero de 2023, se dispuso *Orden* en la cual se declaró no ha lugar la *Moción Solicitando Reconsideración* del señor **MACHADO GUZMÁN**.[15]

El 7 de febrero de 2023, el señor **MACHADO GUZMÁN** presentó *Moción Informando Envió de Contestación a Requerimiento de Producción de Documentos*.[16] En la mayoría de los requerimientos, el señor **MACHADO GUZMÁN** enfatizó que no existían documentos responsivos adicionales que no figuraran dentro de los documentos producidos por **MEDICAL EXPRESS** y **NECCO**. Por otro lado, objetó otros requerimientos por motivo de que fueron

---

[12] Apéndice de la *Petición de Certiorari,* págs. 723– 727.
[13] *Íd.,* págs. 654- 657.
[14] *Íd.,* págs. 690- 695.
[15] *Íd.,* págs. 852- 853.
[16] *Íd.,* pág. 728. y págs. 741- 778.

asunto atendido por la *Sentencia* prescrita el 20 de diciembre de 2022 por el Tribunal de Apelaciones.

Por consiguiente, el 20 de febrero de 2023, NECCO y MEDICAL EXPRESS presentaron *Urgente Moción para que Jorge Padre Conteste Requerimientos, se Impongan Sanciones Según Apercibimiento en Vista del 23 de enero de 2023, y se Aperciba de Eliminarle las Alegaciones*.[17] En resumen, aseguraron que el señor MACHADO GUZMÁN estaba nuevamente incumpliendo con las órdenes del Tribunal pues el *Requerimiento de Producción de Documentos* era uno nuevo y distinto al cursado anteriormente. El 21 de febrero de 2023, el señor MACHADO GUZMÁN presento *Oposición a Moción Solicitando Orden y Sanciones*.[18]

El 24 de febrero de 2023, se determinaron las tres (3) órdenes recurridas. En la primera *Orden*, se estableció lo siguiente:

> "Parte demandada Machado Guzmán, cumpla con las órdenes del Tribunal sobre el descubrimiento de prueba. Fije posición en cuanto a la solicitud de imposición de sanciones. Tenga 15 días para cumplir".[19]

En la segunda *Orden*, concerniente a la *Moción Solicitando Reconsideración* presentada el 25 de enero de 2023 por el señor MACHADO GUZMÁN, se precisó:

> "No ha lugar a la reconsideración. Se le han brindado [numerosas] oportunidades para cumplir con el descubrimiento de prueba sin que cumpla".[20]

En la tercera *Orden*, la decisión del Tribunal recurrido, en cuanto a la *Oposición a Moción Solicitando Orden y Sanciones* presentada por el señor MACHADO GUZMÁN, se circunscribió a lo siguiente: "Véase Orden de igual fecha y asunto". [21]

El 13 de marzo de 2023, NECCO y MEDICAL EXPRESS presentaron una *Segunda Moción Urgente para que Jorge Machado Guzmán Conteste Requerimientos de Documentos y para que se Impongan Sanciones Según*

---

[17] Apéndice de la *Petición de Certiorari*, págs. 729- 735.
[18] *Íd.*, págs. 812- 817.
[19] *Íd.*, págs. 846- 847.
[20] *Íd.*, págs. 848- 849.
[21] *Íd.*, págs. 850- 851.

*Apercibimiento en Vista del 23 de enero de 2023.* Insistieron que el señor **MACHADO GUZMÁN** continuaba ignorando las órdenes del Tribunal. Por ello, solicitaron al foro primario que: (1) declarara ha lugar la moción de sanciones; (2) ordenara al señor **MACHADO GUZMÁN** cancelar $40.00 diarios en sellos de rentas internas desde el 7 de febrero de 2023; (3) impusiera al señor **MACHADO GUZMÁN** que produjera los referidos documentos en un término de cinco (5) días; y (4) apercibiera al señor **MACHADO GUZMÁN** directamente a su dirección postal.

Por no coincidir, el 20 de marzo de 2023, el señor **MACHADO GUZMÁN** presentó una *Moción Fijando Posición en Cuanto a Sanciones y Oposición a Segunda Moción de Sanciones.*[22] El 23 de marzo de 2023, **NECCO** y **MEDICAL EXPRESS** presentaron una réplica.[23] En tales circunstancias, se expidió una *Orden* mediante la cual se resolvió lo siguiente:

> Parte demandada Jorge Machado Guzmán, en 15 días muestre causa por la cual no se deba conceder el remedio que solicita la parte demandante. Se le advierte que, de continuar la conducta contraria a las órdenes del Tribunal y a las Reglas de Procedimiento Civil, particularmente las atinentes al descubrimiento de prueba, se requerirá de su comparecencia al Tribunal para que muestre causa por la cual no deban eliminarse las alegaciones que hizo en la Contestación a la Demanda.[24]

Inconforme, el 27 de marzo de 2023, el señor **MACHADO GUZMÁN** acudió ante este foro intermedio revisor mediante *Petición de Certiorari* señalando el(los) siguiente(s) error(es):

> Erró y abusó de su discreción el TPI al ordenar a producir documentos luego de que este Honorable Tribunal revocara una sentencia previa que ordenaba producir los mismos documentos entre otros.

> Erró y abusó de su discreción el TPI al ordenar a producir trece años de estados bancarios y de tarjetas de crédito, pólizas de vida, títulos de autos, y otros, sin considerar que la Regla 23.1 limita el descubrimiento a información pertinente.

El 30 de marzo de 2023, pronunciamos *Resolución* en la cual se concedió un plazo perentorio de diez (10) días a **NECCO** y a **MEDICAL EXPRESS**

---

[22] Apéndice de la *Petición de Certiorari*, págs. 842- 845.
[23] Entrada Núm. 465 en el expediente electrónico del Sistema Unificado de Manejo y Administración de Casos (SUMAC).
[24] Entrada Núm. 466 en el expediente electrónico del Sistema Unificado de Manejo y Administración de Casos (SUMAC).

para mostrar causa por la cual no debíamos expedir el auto de *certiorari* y revocar el dictamen impugnado.

Evaluado concienzudamente el expediente del caso, y contando con el beneficio de la comparecencia de todas las partes, nos encontramos en posición de adjudicar. Puntualizamos las normas de derecho pertinentes a la(s) controversia(s) planteada(s).

- II -

- A – *Certiorari*

El auto de *certiorari* es un vehículo procesal extraordinario utilizado para que un tribunal de mayor jerarquía pueda revisar discrecionalmente las órdenes o resoluciones interlocutorias decretadas por una corte de inferior instancia judicial.[25] Por ello, la determinación de expedir o denegar este tipo de recurso se encuentra enmarcada dentro de la discreción judicial.[26]

De ordinario, la discreción consiste en "una forma de razonabilidad aplicada al discernimiento judicial para llegar a una conclusión justiciera".[27] Empero, el ejercicio de la discreción concedida "no implica la potestad de actuar arbitrariamente, en una u otra forma, haciendo abstracción del resto del derecho".[28]

Ahora bien, en los procesos civiles, la expedición de un auto de *certiorari* se encuentra delimitada a las instancias y excepciones contenidas en la Regla 52.1 de las de Procedimiento Civil de 2009.[29] La aludida Regla dispone que solo se expedirá un recurso de *certiorari* cuando, "se recurra de una resolución u orden bajo remedios provisionales de la Regla 56, *injunctions* de la Regla 57 o de la denegatoria de una moción de carácter dispositivo".[30] En ese sentido, y a manera de excepción, se podrá expedir este auto discrecional cuando:

---

[25] *Rivera et al. v. Arcos Dorados et al.*, 212 DPR 194 (2023); *Torres González v. Zaragoza Meléndez*, 211 DPR 821 (2023); *McNeil Healthcare v. Mun. Las Piedras I*, 206 DPR 391, 403 (2021).
[26] *Íd.*
[27] *Medina Nazario v. McNeil Healthcare LLC*, 194 DPR 723, 729 (2016).
[28] *Íd.*
[29] 32 LPRA Ap. V, R. 52.1; *Torres González v. Zaragoza Meléndez, supra.*
[30] *Caribbean Orthopedics v. Medshape et al.*, 207 DPR 994, 1004 (2021).

(1) se recurra de decisiones sobre la admisibilidad de testigos de hechos o peritos esenciales;

(2) en asuntos relacionados a privilegios evidenciarios;

(3) en casos de anotaciones de rebeldía;

(4) en casos de relaciones de familia;

(5) en casos revestidos de interés público; o

(6) en cualquier situación en la que esperar a una apelación constituiría un fracaso irremediable de la justicia.

Lo anterior constituye tan solo la primera parte de nuestro análisis sobre la procedencia de un recurso de *certiorari* para revisar un dictamen del Tribunal de Primera Instancia. De modo que, aun cuando un asunto esté comprendido entre las materias que las Reglas de Procedimiento Civil de 2009 nos autorizan a revisar, el ejercicio prudente de esta facultad nos requiere tomar en consideración, además, los criterios dispuestos en la Regla 40 del Reglamento del Tribunal de Apelaciones.[31]

Por otro lado, el examen de los [recursos] discrecionales no se da en el vacío o en ausencia de otros parámetros.[32] Para ello, la Regla 40 de nuestro Reglamento instituye los indicadores a considerar al evaluar si se debe o no expedir un recurso de *certiorari*. A saber:

(A) Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho;

(B) Si la situación de hechos planteada es la más indicada para el análisis del problema;

(C) Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia;

(D) Si el asunto planteado exige una consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados;

(E) Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración;

(F) Si la expedición del auto o de la orden de mostrar causa no causan un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio; y

(G) Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia.[33]

Es preciso aclarar, que la anterior no constituye una lista exhaustiva, y ninguno de estos criterios es determinante, por sí solo, para justificar el

---

[31] *McNeil Healthcare v. Mun. Las Piedras I, supra,* pág. 404; *800 Ponce de León v. AIG, supra.*

[32] *Íd.*

[33] 4 LPRA Ap. XXII-B, R. 40; *Torres González v. Zaragoza Meléndez, supra*; *Rivera Figueroa v. Joe´s European Shop,* 183 DPR 580 (2011).

ejercicio de nuestra jurisdicción.[34] En otras palabras, los anteriores criterios nos sirven de guía para poder determinar de la forma más sabia y prudente si se justifica nuestra intervención en la etapa del procedimiento en que se encuentra el caso.[35] Ello, pues distinto al recurso de apelación, este Tribunal posee discreción para expedir el auto de *certiorari*.[36] La delimitación que imponen estas disposiciones reglamentarias tiene "como propósito evitar la dilación que causaría la revisión judicial de controversias que pueden esperar a ser planteadas a través del recurso de apelación."[37]

Finalmente, este Tribunal solo intervendrá con las determinaciones interlocutorias discrecionales procesales del tribunal sentenciador cuando este último haya incurrido en un craso abuso de discreción.[38] Esto es, "que el tribunal actuó con prejuicio o parcialidad, o que se equivocó en la interpretación o aplicación de cualquier norma procesal o de derecho sustantivo, y que nuestra intervención en esa etapa evitará un perjuicio sustancial".[39]

### - B – *Descubrimiento de Prueba*

Sabido es, que las Reglas de Procedimiento Civil de 2009 conceden a todas las partes en un pleito el derecho a realizar un *descubrimiento de prueba*.[40] El *descubrimiento de prueba* persigue el propósito de ayudar a precisar y minimizar las controversias litigiosas; obtener evidencia que va a ser utilizada en el juicio; facilitar la búsqueda de la verdad y perpetuar la prueba relacionada a su causa.[41]

Al interpretar esta figura jurídica, nuestra jurisprudencia ha expresado que este mecanismo se caracteriza por ser de alcance amplio y liberal, para facilitar la tramitación de los pleitos y evitar inconvenientes, sorpresas e

---

[34] *García v. Padró*, 165 DPR 324, 335 esc. 15 (2005).
[35] *Mun. Caguas v. JRO Construction, Inc.*, 201 DPR 703, 712 (2019).
[36] *Feliberty v. Soc. de Gananciales*, 147 DPR 834, 837 (1999).
[37] *Scotiabank v. ZAF Corp. et al.*, 202 DPR 478, 486– 487 (2019); *Mun. Caguas v. JRO Construction Inc., supra.*
[38] *García v. Asociación*, 165 DPR 311, 322 (2005).
[39] *Lluch v. España Service Sta.*, 117 DPR 729, 745 (1986).
[40] 32 LPRA Ap. V, R. 23.1.
[41] *Berríos Falcón v. Torres Merced*, 175 DPR 962, 971 (2009).

injusticias que surgen cuando las partes ignoran hasta el día del juicio las cuestiones y los hechos que en realidad son objeto del litigio.[42]

Ahora bien, al *descubrimiento de prueba* le son *oponibles* dos (2) limitaciones: (1) **su pertinencia**; y (2) **la existencia de un privilegio**.[43] La *pertinencia* se debe interpretar ampliamente, pero puede ser limitada de algún modo por el tribunal, pero se determinará primordialmente al considerar los siguientes factores: (i) prueba que sea admisible en el juicio; (ii) hechos que puedan servir para descubrir evidencia admisible; (iii) datos que puedan facilitar el desarrollo del proceso; (iv) admisiones que puedan limitar las cuestiones realmente litigiosas entre las partes; (v) datos que puedan servir para impugnar la credibilidad de los testigos; (vi) hechos que puedan usarse para contrainterrogar a los testigos de la otra parte; (vii) nombres de los testigos que la parte interrogada espera utilizar en el juicio.[44] Al evaluar textualmente lo dispuesto en la Regla 23.1 (a) de las de Procedimiento Civil de 2009 esta reza como sigue:

> El alcance del descubrimiento de prueba, a menos que sea limitado de algún modo por el tribunal, en conformidad con las disposiciones de estas reglas, será como sigue:
>
> (a) En general. **Las partes podrán hacer descubrimiento sobre cualquier materia, no privilegiada, que sea pertinente al asunto en controversia en el pleito pendiente**, ya se refiera a la reclamación o defensa de cualquier otra parte, incluso la existencia, descripción, naturaleza, custodia, condición y localización de cualesquiera libros, información almacenada electrónicamente, documentos u otros objetos tangibles, y la identidad y dirección de personas que conozcan hechos pertinentes. No constituirá objeción el que la información solicitada sea inadmisible en el juicio, siempre que exista una probabilidad razonable de que dicha información conduzca al descubrimiento de evidencia admisible.[45]

---

[42] *McNeil Healthcare v. Mun. Las Piedras II, supra, Berríos Falcón v. Torres Merced, supra.*

[43] *Torres Rodríguez v. Noticentro de Puerto Rico*, 210 DPR 783 (2022); *McNeil Healthcare v. Mun. Las Piedras II, supra*; *Ponce Adv. Med. v. Santiago González et al.*, 197 DPR 891, 898–899 (2017).

[44] ***Prueba pertinente*** es la que produzca o pueda producir, entre otras: [...] (a) prueba que sea admisible en el juicio; (b) hechos que puedan servir para descubrir evidencia admisible; (c) datos que puedan facilitar el desarrollo del proceso; (d) admisiones que puedan limitar las cuestiones realmente litigiosas entre las partes; (e) datos que puedan servir para impugnar la credibilidad de los testigos; (f) hechos que puedan usarse para contrainterrogar a los testigos de la otra parte; o (g) nombres de los testigos que la parte interrogada espera utilizar en el juicio. *McNeil Healthcare v. Mun. Las Piedras II, supra*, pág. 674. Refiérase además a *Torres Rodríguez v. Noticentro de Puerto Rico, supra*, pág. 792. Véase, también: 32 LPRA Ap. V, R. 23.1. (énfasis nuestro).

[45] 32 LPRA Ap. V, R. 23.1. (a) (énfasis nuestro).

Así pues, es necesario afianzar que los tribunales tienen el deber de asumir un rol activo desde el albor del pleito, por lo que, es recomendable que en la etapa del *descubrimiento de prueba* también intervengan y dirijan el mismo, toda vez que con ello se garantiza un proceso judicial justo, rápido y económico.[46] Precisamente, es por esta razón que el tribunal está autorizado, no solo a **limitar o extender el alcance del *descubrimiento de prueba***, sino que también está facultado para supervisar el proceso, ordenar a una parte a descubrir prueba y sancionar a aquella que se rehúse a cumplir las órdenes dirigidas a esos efectos.[47]

Por otro lado, la Regla 23.2 (b) de las de Procedimiento Civil de 2009 faculta al tribunal a pronunciar órdenes protectoras para resguardar a una parte, objeto de un *descubrimiento de prueba*, **de hostigamiento, perturbación u opresión, así como de cualquier molestia o gasto indebido**.[48] En ese contexto, la orden del tribunal podrá decretar, por justa causa, entre otras medidas: (1) no se lleve a cabo el descubrimiento o (2) no se lleve a cabo el descubrimiento de ciertas materias, limitando así su alcance al descubrimiento de evidencia admisible.[49]

En lo concerniente a la naturaleza de la información contenida en las planillas, nuestro Tribunal Supremo decidió:

> Las normas de confidencialidad que establece la ley no se han estimado, en consecuencia, equivalentes a la creación de un privilegio. No inmunizan al contribuyente contra el **descubrimiento de información pertinente**, aunque tampoco lo exponen a persecución por el Estado o litigantes particulares. La emisión de órdenes protectoras puede establecer el equilibrio necesario entre el derecho al descubrimiento *bona fide* de información pertinente y el derecho a la intimidad del promovido.[50]

Empero, la determinación de que la información solicitada es pertinente y no privilegiada no significa que las planillas de contribuciones

---

[46] *Lluch v. España Service Sta.*, 117 DPR 729, 744 (1986).
[47] Reglas 34.2 y 34.3 de Procedimiento Civil de Puerto Rico, 32 LPRA Ap. V, R. 34.2 y 34.3; *Lluch v. España Service Sta., supra*, pág. 742. (énfasis nuestro).
[48] (énfasis nuestro).
[49] 32 LPRA Ap. V, R. 23.2(b).
[50] *Rodríguez v. Scotiabank de PR.*, 113 DPR 210 (1982).

en Puerto Rico puedan ser objeto de descubrimiento indiscriminado.[51] En ese sentido, **solo debe hacerse disponible la información estrictamente pertinente**.[52] En el pasado, este Tribunal de Apelaciones concluyó al amparo de la norma jurisprudencial instituida en *Rodríguez v. Scotiabank de PR* y al amparo de las normas de confidencialidad que establece el Código de Rentas Internas.[53] Por lo que, aunque exista la requerida pertinencia, el derecho a la intimidad consagrado en nuestra Constitución exige que se proteja al promovido contra la opresión, el hostigamiento, la perturbación, las molestias o los gastos indebidos. Rigurosamente, **solamente se debe hacer disponible la información estrictamente pertinente**.[54]

### - III -

En su primer señalamiento, el señor **MACHADO GUZMÁN** punteó que el foro de instancia incidió al ordenar la producción de una serie de documentos (estados financieros; estados de cuentas bancarias; estados de cuenta de tarjetas de crédito; pólizas de vida; títulos y licencias de vehículos de motor; títulos y licencias de embarcaciones, y otros) luego de que este Tribunal de Apelaciones revisara una *Orden* dictada el 1 de septiembre de 2022. Enfatizó que en la referida *Sentencia* intimada el 22 de diciembre de 2022, este tribunal precisó:[55]

> La totalidad de la información financiera solicitada por la parte recurrida dentro de la naturaleza del pleito que nos ocupa no es pertinente. La pesquisa sobre como el peticionario reportó los ingresos recibidos de las empresas Necco y Medical Express no necesariamente se obtiene con las **planillas de contribución sobre ingresos**, pues esta se puede obtener mediante una certificación expedida por el Departamento de Hacienda.
>
> [...]
>
> [E]l TPI deberá emitir una orden dirigida al Departamento de Hacienda para que este entregue una **certificación acreditativa** del hecho de si incluyó como ingreso en sus planillas de 2003 al 2016 las cantidades alegadas en el pleito de autos.[56]

---

[51] *Íd.*, pág. 216.
[52] *Íd.*
[53] 113 DPR 210 (1982). 13 LPRA § 30021.
[54] *Íd.*, (énfasis nuestro).
[55] Apéndice de la *Petición de Certiorari,* pág. 628. Refiérase también a las siguientes *Sentencias* de este Tribunal de Apelaciones: **KLCE202200086** y **KLCE202201217**.
[56] *Íd.*, págs. 12– 13 del caso **KLCE202201217**. (énfasis nuestro).

Es evidente que nuestra determinación persiguió limitar el alcance tan amplio del descubrimiento de unas planillas de contribución sobre ingresos. Es decir, se estaban solicitando las planillas de contribución sobre ingresos de veintiún (21) años atrás, aun cuando el reclamo se retrotraía al año 2003. En ninguna instancia, este foro revisor decretó limitar la totalidad del alcance del *descubrimiento de prueba* ni de otra documentación pertinente a los hechos. En ese sentido, sabido es que los derechos y obligaciones adjudicados en el ámbito judicial, mediante dictamen firme, constituyen la *ley del caso*.[57] Dicho eso, cabe apuntalar que limitar [irrazonablemente] el acceso al *descubrimiento de prueba* puede dar lugar a que se trasgreda el debido proceso de ley.[58]

Como segundo señalamiento, el señor **MACHADO GUZMÁN** argumentó que el foro primario desacertó al ordenar la producción de veintiún (21) años de estados financieros; estados de cuentas bancarias; estados de cuenta de tarjetas de crédito; pólizas de vida; títulos y licencias de vehículos de motor; títulos y licencias de embarcaciones, entre otros, sin considerar lo establecido en la Regla 23.1 de las de Procedimiento Civil de 2009 y su alcance. Coligió que los requerimientos solicitados por **NECCO** y **MEDICAL EXPRESS** no pasan el umbral de *pertinencia* de la Regla 23.1 de las de Procedimiento Civil de 2009.

En cambio, **NECCO** y **MEDICAL EXPRESS** puntualizaron que la *Sentencia* dictada el 20 de diciembre de 2022 por este foro revisor de ninguna manera prohíbe o restringe la obtención o el requerimiento de otros documentos no relacionados a las planillas de contribución sobre ingresos, sino que simplemente elaboraron un mecanismo menos oneroso para obtener la información pertinente. Además, cimentaron que la divulgación de

---

[57] Las determinaciones de este Tribunal Apelativo constituyen la *ley del caso* en todas aquellas cuestiones consideradas y decididas. Dichas determinaciones, como regla general, obligan tanto al Tribunal de Instancia. Véase, *Félix v. Las Haciendas* 165 DPR 832 (2005).
[58] *Rio Mar Community Association, Inc., v. Mayol Bianchi*, 208 DPR 100 (2021).

información financiera no constituía un privilegio reconocido, por lo que, regiría su pertinencia a los hechos.

Ciertamente, el señor **MACHADO GUZMÁN** se ha negado, en varias ocasiones, a descubrir prueba que le han solicitado **NECCO** y **MEDICAL EXPRESS**.[59] Conocido es que la parte que se niega a obedecer una orden expedida para descubrir evidencia, se expone a potenciales sanciones entre ellas: (1) desacato; (2) se consideren los hechos objeto del descubrimiento o cualesquiera otros probados; (3) impedir a la parte que incumpliese sostener u oponerse a determinadas reclamaciones; (4) eliminación de las alegaciones o parte de las mismas a la suspensión de todos los procedimientos; (5) la imposición de sanciones económicas, o (6) la imposición del pago de gastos y honorarios.[60] Por lo que, toda negación a descubrir prueba deberá responder cabalmente a la sustancia de la admisión requerida y cuando la buena fe exija admisión, deberá especificarse lo que sea cierto y negar el resto.[61]

Ahora bien, también es consabido que los mecanismos de *descubrimiento de prueba* pueden ser ejecutados de manera amplia y liberal.[62] No obstante, les corresponde a los foros judiciales velar por que el *descubrimiento de prueba* no sea **hostil**, **opresivo** o **cause gastos** o **molestias indebidas**.[63]

---

[59] Apéndice de la *Petición de Certiorari*, págs. 846 – 853.

[60] 32 LPRA Ap. V, R. 34.3. Cabe destacar que sin la *Orden* no proceden sanciones. Véase, además: *Valentín González v. Crespo Torres*, 145 DPR 887 (1998). Según el *Requerimiento de Producción de Documentos* presentado por **NECCO** y **MEDICAL EXPRESS**, estos le solicitan al señor **MACHADO GUZMÁN** la producción de los siguientes documentos: (1) Evidencia de todas las rentas pagadas por Necco y Medical Express recibidas por el señor Machado Guzmán desde 2003 al 2016. (2) Copia de todo estado mensual para toda tarjeta de crédito expedida a nombre del señor Machado Guzmán desde el 2003 al 2016. (3) Estados de cuenta en los que el señor Machado Guzmán figura como tenedor de la cuenta desde el 2003 al 2016. (4) Cheques cancelados que correspondan a los estados de cuenta donde el señor Machado Guzmán figura como tenedor de la cuenta desde el 2003 al 2016. (5) Copia de toda póliza de vida en vigencia en algún momento desde el 2003 al 2016. (6) Copia de todo certificado de título o registración de toda embarcación inscrita a nombre del señor Machado Guzmán. (7) Copia de todos los registros de vehículos de motor que la señora Hilda Ruiz Acevedo tuvo desde el 2003 al 2016. (8) Copia de todo formulario W– 2 recibidos por el señor Machado Guzmán y la señora Ruiz Acevedo de Necco y Medical Express para los años 2003– 2016. (9) Copia de toda declaración informativa contenida en los formularios 480.6 para los años contributivos 2003 hasta 2916 recibidos por el señor Machado Guzmán y la señora Rivera Acevedo. (10) Toda evidencia que demuestre que el señor Machado Guzmán es dueño 100% de las acciones de Medical Express.

[61] Rafael Hernández Colón, *supra*, pág. 370.

[62] *Casasnovas v. UBS Financial*, 198 DPR 1040 (2017).

[63] *Rodríguez v. SYNTEX*, 160 DPR 364 (2003).

En el presente caso, cuando evaluamos específicamente el *Requerimiento de Producción de Documentos* presentado por **Necco** y **Medical Express**, cabe resaltar que contiene 23 requerimientos, de los cuales 17 consisten en la producción de documentos de más de una dos (2) décadas entre los años 1995 hasta el 2016. Al justipreciar la totalidad de las circunstancias, percibimos que se desprende que para el 1994, mediante *Informe de Corporaciones Domésticas* el señor Jorge Machado Ruíz (hijo), fue nombrado o asumió cargo como *presidente* de **Necco**.[64]

En el caso de **Medical Express**, la entidad aparece como cancelada desde el 30 de diciembre de 2023, y el señor **Jorge Machado Ruíz** (hijo) aparece también como *presidente* de la corporación.[65] En ese marco, cabe destacar que es el propio *presidente* de **Necco** y **Medical Express**, el señor Jorge Machado Ruíz (hijo) quien le está solicitando al señor **Machado Guzmán** (padre) múltiples documentos respecto a las finanzas y asuntos internos de las corporaciones que él mismo encomienda.

Conforme a nuestro estado de derecho corporativo todo accionista de una corporación puede solicitar una inspección del registro de las acciones, la relación de accionistas y los demás libros de la corporación.[66] En ese sentido, entendemos que los siguientes documentos: copia de todo formulario W– 2 recibidos por el señor **Machado Guzmán** de **Necco** y **Medical Express** para los años 1995 hasta el 2016; copia de toda declaración informativa contenida en los formularios 480.6 para los años contributivos 1995 hasta el 2016 recibidos por el señor **Machado Guzmán**; y evidencia de las rentas pagadas por **Necco** y **Medical Express**; información financiera concerniente a **Necco** y **Medical Express** constituyen documentos que por su naturaleza conforman parte de los libros corporativos. La realidad del caso

---

[64] Apéndice de la *Petición de Certiorari*, pág. 365- 366. Para constatar esta información hicimos una búsqueda en el Registro de Corporaciones del Departamento de Estado de Puerto Rico y, efectivamente, el señor Jorge Machado Ruíz (hijo) surge como *presidente* y *agente residente*

[65] Refiérase a: https://rcp.estado.pr.gov/en/entity-information?c=75780-111.

[66] Art. 7.10 de la *Ley General de Corporaciones*, 14 LPRA § 3650; *Domenech v. Integration Corp.*, 187 DPR 595 (2013).

es que el señor **JORGE MACHADO RUÍZ** (hijo) es accionista de ambas corporaciones y razonablemente ha tenido y tiene acceso a toda información financiera y sensitiva de ambas corporaciones.[67] Inclusive, un oficial de una corporación naturalmente debe observar sus deberes y funciones inherentes para con la corporación para evitar generar responsabilidad personal que atente contra la sana administración de la empresa.[68]

Así, corresponde al señor **MACHADO RUÍZ** cumplir con el *descubrimiento de prueba* (*Requerimiento de Producción de Documentos*) **únicamente** con los documentos que no puedan ser descubiertos en los libros corporativos. Respecto a los estados financieros; estados de cuentas bancarias; estados de cuenta de tarjetas de crédito; pólizas de vida; títulos y licencias de vehículos de motor; títulos y licencias de embarcaciones, documentos con información financiera y sensitiva del señor **MACHADO RUIZ** en su carácter personal será limitado exclusivamente al **término de cinco (5) años**. Es decir, desde el año **2012 al 2017**. Pretender más de dos (2) décadas de documentos financieros del señor **MACHADO RUÍZ** resulta hostil, opresivo y costoso.

## - IV -

Por los fundamentos antes expuestos, ***expedimos*** el auto de *Certiorari* a los fines de ***modificar*** las *Órdenes* recurridas a los efectos de permitir el *descubrimiento de prueba* sobre los estados financieros; estados de cuentas bancarias; estados de cuenta de tarjetas de crédito; pólizas de vida; títulos y licencias de vehículos de motor; títulos y licencias de embarcaciones limitado

---

[67] En nuestro ordenamiento se ha reconocido que los accionistas de una corporación tienen un derecho a inspeccionar los libros y cuentas de la misma. Cuando el accionista procure inspeccionar los libros y cuentas de la corporación debe demostrar que: (1) es un accionista; (2) ha hecho el requerimiento según exige la ley, y (3) que la inspección que procura es para un propósito válido. Para efectos de la ley, "propósito válido" se define como un propósito que se relacione razonablemente con el interés de la persona como accionista. El derecho a inspección de los libros y cuentas de una corporación que tienen los accionistas **no es absoluto**, debido a que el propósito válido no puede ser adverso a los intereses de la misma. Cuando se solicita la inspección de los libros y cuentas de una corporación, el accionista tiene el peso de la prueba de demostrar que el propósito que alega es válido. Así, cuando se alega como propósito válido investigar transacciones impropias o mala administración, el Tribunal Supremo de Delaware ha requerido que el accionista demuestre, mediante preponderancia de la prueba, que tiene una base razonable para creer que la corporación está siendo mal administrada. Véase *Herger Pacheco v. Calidad Vida Vecinal*, 190 DPR 1007 (2014). (énfasis nuestro).

[68] *Rivera Sanfeliz v. Jta. Dir. FirstBank*, 193 DPR 38 (2015).

a los años 2012 al 2017. Así ***modificadas***, se ***devuelve*** el caso al Tribunal de Primera Instancia, Sala Superior de San Juan, para que proceda de conformidad con lo aquí resuelto.

Se ***deja sin efecto*** la paralización dispuesta mediante *Resolución* tramitada el 24 de julio de 2024.

**No ha lugar** a *Moción Solicitando Consolidación* presentada el 2 de mayo de 2025 por la señora **MARIEL MACHADO RUIZ.**

Al amparo de la Regla 35 (A)(1) de nuestro Reglamento, el Tribunal de Primera Instancia puede proceder de conformidad con lo aquí resuelto, sin tener que esperar por el recibo de nuestro mandato.[69]

Lo acordó el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

La Jueza Cintrón Cintrón disiente sin opinión escrita.

Lcda. Lilia M. Oquendo Solís<br>
Secretaria del Tribunal de Apelaciones

---

[69] Regla 35 (A)(1): "La presentación de una solicitud de *certiorari* no suspenderá los procedimientos ante el Tribunal de Primera Instancia, salvo una orden en contrario expedida por iniciativa propia o a solicitud de parte por el Tribunal de Apelaciones. La expedición del auto de *certiorari* suspenderá los procedimientos en el Tribunal de Primera Instancia, **salvo que el Tribunal de Apelaciones disponga lo contrario**." 4 LPRA Ap. XXII-B R. 35.